UNITED NATIONAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110389. Promulgated June 15, 1943.

*Roger L. Shidler, Esq.*, for the petitioner.
*B. H. Neblett, Esq.*, and *C. R. Maxwell, Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The Commissioner determined a deficiency of $3,224.86, in petitioner's income tax for the fiscal year ended June 30, 1939, by applying section 115 (g) of the Revenue Act of 1938 [1] to the redemption and cancellation of 75 percent of the common capital stock of Murphey, Favre & Co. (the Murphey Co.) owned by petitioner, which owned 100 percent of the stock of that company, and thus taxing a part of the amount received by petitioner as an ordinary dividend.

There was distributed to petitioner by the Murphey Co. the sum of $176,746.56, in cash and property, upon the surrender of 750 shares of the stock of that company. It had been agreed by the respective officers of the Murphey Co. and petitioner that the distribution should be made in securities having a total value of $60,100.92, and in cash in the amount of $116,645.63; and that the source of part of the cash was to be 75 percent of the total paid-in surplus and 75 percent of the

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

total earned surplus, as of July 31, 1938, or, $58,058.17 from paid-in surplus and $43,688.38 from earned surplus.

In its income tax return for the fiscal year ending in 1939, petitioner included $43,688.38 in its gross income as income from dividends from Murphey Co. That amount represented 75 percent of the earned surplus of the Murphey Co. as of July 31, 1938, which petitioner had received as part of the distribution in September 1938, according to the understanding of the parties to the transaction. In determining the deficiency respondent increased the dividends received from the Murphey Co. by $64,821.42, his determination being that the distribution was a taxable dividend to the extent of earnings or profits accumulated after February 28, 1913, and that the total of adjusted accumulated earnings or profits after February 28, 1913, was $108,509.80 as of the date of the distribution.

In its petition to this Court petitioner alleged that it erred in including the sum of $43,688.38 in income and, as a result, overpaid income tax in the amount of $1,170.27.

The first question is whether the distribution from the Murphey Co. to petitioner on September 9, 1938, upon the surrender for cancellation of 750 shares of Murphey Co. stock, was made at such time and under such conditions as to make the distribution and cancellation or redemption, in whole or in part, essentially equivalent to the distribution of a taxable dividend, within the meaning of section 115 (g).

In the event the first question is decided against petitioner, a second question is to be considered which relates to the amount of the distribution which is to be treated as a taxable dividend under section 115 (g). The parties have stipulated that the amount of the earnings or profits of the Murphey Co. accumulated after February 28, 1913, up to the time of the distribution to petitioner in cancellation or redemption of its stock in Murphey, is $108,509.80, including a net profit of $20,389 realized by Murphey upon cancellation and retirement of all of its preferred stock prior to the taxable year. The second question is whether $20,389 should be regarded as part of the accumulated earnings or profits of the Murphey Co. for the purpose of section 115 (g) in this proceeding, it being petitioner's contention that the redemption of the preferred stock was a capital transaction and that any profit realized by the Murphey Co. thereon does not increase its accumulated earnings or profits after February 28, 1913. Petitioner contends that for the purpose of section 115 (g), if it is applied in this case, the accumulated earnings of the Murphey Co. did not exceed $88,120.80. Respondent takes the opposite view, contending that the above profit increased the accumulated earnings or profits to $108,509.80.

*Issue 1.*—Petitioner contends that section 115 (g) does not apply, and the entire amount of $176,746.55 received by it by virtue of the redemption of 750 shares of Murphey Co. stock was a distribution in

partial liquidation covered by section 115 (c),[2] and that, since it was no more than the cost of the stock redeemed, there is nothing to tax. Petitioner admits that the redemption of the 750 shares of Murphey Co. stock was to enable petitioner to sell all of the common stock of the Murphey Co.

Respondent contends that the distribution in question did not have any of the characteristics of a dividend in partial liquidation, citing, *Rheinstrom* v. *Conner*, 33 Fed. Supp. 917; affd., 125 Fed. (2d) 790; certiorari denied, 317 U. S. 654; rehearing denied, 317 U. S. 708; that there was no thought on the part of the officers of the Murphey Co. at the time of the distribution to liquidate its business, citing, *McGuire* v. *Commissioner*, 84 Fed. (2d) 431; certiorari denied, 299 U. S. 591; *W. & K. Holding Corporation*, 38 B. T. A. 830; and that the time at which and the manner in which the redemption of Murphey Co. stock was made were such that the redemption effected a distribution of earnings or profits, citing *George Hyman*, 28 B. T. A. 1231; affd., 71 Fed. (2d) 342; certiorari denied, 293 U. S. 570; *William H. Grimditch*, 37 B. T. A. 402; and *E. M. Peet*, 43 B. T. A. 852.

The facts, in many respects, are similar to the facts in *George Hyman, supra*. Here, as in the *Hyman* case, petitioner was the sole stockholder of a corporation which had a substantial surplus as of July 31, 1938. Petitioner, by causing the Murphey Co. to cancel 75 percent of its stock on the basis of par plus 75 percent of paid-in surplus and 75 percent of earned surplus, received an amount greater than the adjusted earned surplus of $108,509.80. The same effect resulted in the distribution in the *Hyman* case, and what was said there, at page 1233 of the report of the Board of Tax Appeals, may be said here, appropriately, with slight modification to fit the facts in this case, to wit: Thus, as to the amount of the surplus of the Murphey Co., petitioner was in no different situation from what it would have been in had there been an ordinary dividend; and the only difference to the Murphey Co. is that it had a reduced capital, which, after the distribution, was represented by an outstanding 250 shares instead of 1,000. "From such facts it is just as conceivable that the redemption and cancellation were essentially equivalent to a dividend as it is that they were not; and, since the respondent has determined that they

---

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. \* \* \* In the case of amounts distributed (whether before January 1, 1938, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. \* \* \*

were, and the burden of proof is on petitioner, we cannot affirmatively find that it was not."

There is little evidence relating to the business activities of the Murphey Co. The testimony of its secretary-treasurer was limited and general on this subject. He testified that the volume of business decreased after 1932. The evidence shows that the inventories of the Murphey Co. increased from $485,703 at the end of 1928 to $776,930.72 at the end of 1929. In August of 1928 capital was increased from $190,000 to $450,000, and part of the increase consisted of 2,335 shares of preferred stock which were issued for $233,500 in cash. In 1931 and 1932 all of the preferred stock was redeemed, so that the capital of the Murphey Co. was reduced by approximately $200,000. Also, in June 1932 the authorized common stock was reduced from 2,000 shares to 1,000 shares. The books of the Murphey Co. were not produced at the trial, and the evidence does not show the reason for this reduction or what adjustments were made on the books after the reduction. Lacking evidence, it must be assumed that the reduction of the common stock reduced book capital by $100,000 and increased book accumulated earnings by $100,000. We think the above is evidence that the Murphey Co. had substantially adjusted its capital downward by the end of 1932 in harmony with its decrease in business and the decrease in its need for capital. A legitimate business reason for increasing the capital stock of a corporation is found in the need for acquiring capital to carry on increased business, and, correspondingly, a decrease in business will provide a business reason for reducing capital stock.

The existence of a substantial amount of accumulated undivided profits or earnings available for the payment of dividends, at a time when there is a distribution upon a redemption of stock, invites close scrutiny of the distribution. Part of petitioner's burden of proof is to show that the redemption of the stock in 1938 was not a cloak for the distribution of taxable dividends. In this case the record contains testimony that in September 1938 the Murphey Co. did not need as much as it had in the past to carry its inventory. One interpretation to put upon such evidence is that the business needs of the Murphey Co. did not require retention of the very substantial accumulation of earnings and profits, and business conditions were such that a declaration and distribution of a dividend would have been within the lines of good management. Petitioner has failed to introduce evidence, under its burden of proof, to show that the retirement of 750 shares was intended to be for Murphey's business purposes. On the other hand, the resolution of the directors of the Murphey Co. adopted at the meeting of September 6, 1938, clearly evidences an intent to distribute 75 percent of the accumulated earnings. This intent could

have been carried out by declaring and distributing a dividend of 75 percent of accumulated earnings. The Murphey Co. did not declare dividends for its fiscal year ended June 30, 1938, and there is no evidence to show that it did in the fiscal year 1939.

Eugene B. Favre, an officer and director of the Murphey Co., and others associated with the company wished to purchase petitioner's holdings in the Murphey Co. for about $50,000. Favre was also a director of petitioner. The plan which was adopted to carry out the proposed transaction between petitioner and Favre and his group accomplished two things, a distribution to petitioner of part of the net worth of the Murphey Co. and the exclusion of petitioner as a stockholder. When the entire transaction was completed petitioner had received a total of $228,581.72, but all that the vendees paid for petitioner's stock was $51,835.16. The redemption of 750 shares of Murphey Co. stock was a step in the plan under which the capital stock was reduced from 1,000 shares to 250 shares. The redemption served to distribute part of the earnings to petitioner without a declaration of a dividend, although petitioner could have caused the Murphey Co. to declare a dividend. The entire plan enabled petitioner to receive 75 percent of the net worth of the Murphey Co. and to sell the remaining 25 percent for a price which the vendees could pay.

It is conceivable that a plan of this sort to change the ownership of a corporation could have a real business advantage to the corporation, itself, for a change in management, incident to a change in ownership could be necessary, advantageous, and conducive to the better conduct of business. But there is no evidence that such purposes were the reason for the plan for the change in ownership of the Murphey Co. Cf., *Bona Allen, Jr.*, 41 B. T. A. 206. Petitioner cites the *Allen* case as authority to support its contention that the reduction in the capital stock of the Murphey Co. served a business purpose so as to take the transaction out of the scope of section 115 (g). But the facts in the *Allen* case do not resemble the facts here in any way. There, stock was redeemed *at par* in satisfaction of debts of stockholders to the corporation. It was necessary that such debts be reduced to improve the credit standing of the corporation. Also, the corporation needed to retain its cash in the conduct of its business, and the business requirements of the corporation did not permit a distribution of a dividend.

None of the officers of the Murphey Co. were called by petitioner as witnesses. The failure of petitioner to introduce evidence to show a business purpose from the standpoint of the Murphey Co., itself, makes it difficult, if not impossible, to reverse respondent's determination. Also, the reduction in the stock appears to have been initiated by petitioner for the purpose of facilitating the sale of all of petitioner's

interest in the Murphey Co. for about $50,000 and, at the same time, to enable petitioner to receive 75 percent of the net worth of the company. Such does not in itself evidence a business purpose to the corporation affected. The entire plan was to accommodate petitioner and the vendees, and the circumstances were such that the conduct and operation of the business of the Murphey Co. was not affected. The business of the Murphey Co. did not decrease as a result of the distribution upon the redemption of the stock. It went on profitably after the transaction just as it had prior to the whole transaction. The decrease in stock has not been shown to have been related to any decrease in the business of the Murphey Co. In fact, its business was greater in its fiscal year ended June 30, 1939, the year in which the redemption took place, than it was in the preceding fiscal year.

Under section 115 (g) the effect of the redemption is of the greatest importance, and it is not determinative of a question arising under that section whether the stock redeemed was or was not issued as a stock dividend. *Flanagan* v. *Helvering*, 116 Fed. (2d) 937; *Smith* v. *United States*, 121 Fed. (2d) 692. No doubt some weight should be given to the fact that out of the total issued common stock (2,000 shares before the reduction to 1,000 shares in October 1929), 750 shares were issued as stock dividends, resulting in the capitalization of $75,000 of earnings and profits. Thus 37½ percent of the outstanding stock represented corporate profits. However, we do not rest our conclusion solely upon this fact because of the reduction in stock which took place in October 1929, under which, presumably, $100,000 was transferred from capital to earnings, and neither party has enlightened us with respect to the significance of that reduction of stock. The applicability of section 115 (g) is unaffected by whether the stock redeemed was or was not issued as a stock dividend. See *Vesper Co.* v. *Commissioner*, 131 Fed. (2d) 200.

It was provided in the written resolution that the entire distribution in the amount of $176,746.56 should include an amount representing 75 percent of earned surplus as of July 31, 1938. Thus, those in control of the Murphey Co. and representing the petitioner in this case themselves recognized that the distribution was in part the equivalent to the distribution of a taxable dividend. The petitioner even reported this amount in its return as a taxable dividend. Section 115 (g) provides that if the cancellation or redemption "in part" is essentially equivalent to the distribution of a taxable dividend, then the amount so distributed to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. The amount which the written resolution recognized as earnings was an incorrect amount. The parties have stipulated the amount of accumulated earnings available at the time.

Therefore, following section 115 (g), that amount is to be treated as a taxable dividend.

The *ratio decidendi* in *Hyman* v. *Helvering*, 71 Fed. (2d) 342, fits the facts of this case exactly. That reasoning need not be repeated here, but to it reference is made. In our opinion this case is controlled by the *Hyman* case.

It is held that petitioner has failed to overcome the prima facie correctness of respondent's determination that section 115 (g) applies to the distribution in question, and that the amount distributed shall be treated as a taxable dividend to the extent of the accumulated earnings and profits.

Petitioner relies on *Parker* v. *United States*, 88 Fed. (2d) 907, which held that section 115 (g) can not cover redemption payments made to an intervening purchaser for value. In our opinion the *Parker* case is not applicable here in view of the many factors present here which were not present in that case. See *Flanagan* v. *Helvering*, *supra*, where the court did not consider the *Parker* case applicable.

We have here a distribution between two domestic corporations. In *Salt Lake Hardware Co.*, 27 B. T. A. 482, which decided a question arising under the Revenue Act of 1926, it was said that section 201 (g) of the 1926 Act, which corresponds to section 115 (g) of the 1938 Act, could not apply to distributions between corporations which are nontaxable. Here the distributee was a holding company and taxable upon dividends from a domestic corporation. What was said in *Salt Lake Hardware Co.*, *supra*, has no application here.

*Issue 2.*—The second issue relates to the amount of the accumulated earnings of the Murphey Co. for the purpose of applying section 115 (g) in this case. The Murphey Co. realized a gain of $20,389 upon the redemption of all of its preferred stock. Of course that gain was not a taxable gain. But we think it must be considered as constituting part of the "earnings or profits accumulated after February 28, 1913." In *R. N. Weyerhaeuser*, 33 B. T. A. 594, 597, it was stated that many items such as interest upon the obligations of a state and dividends from other corporations "must necessarily be considered in computing earnings and profits, though forming no part of taxable net income." In *Charles F. Ayer*, 12 B. T. A. 284, 287, it was pointed out that the earnings or profits mentioned in section 201 (a) of the Revenue Act of 1921 (which corresponds to section 115 (a) of the Revenue Act of 1938 and of the Internal Revenue Code) are not the equivalent of the taxable net income of a corporation. It may be said here that "earnings or profits" referred to in section 115 (g) are the same as are referred to in section 115 (a), the latter section being somewhat redundant.

The tax free profit realized upon the redemption of the preferred

stock is taxable to a stockholder upon distribution, just as tax free interest on exempt bonds is part of earnings and profits and may form part of ordinary dividends which are taxable when received by stockholders. Under the reasoning of *Charles F. Ayer, supra,* respondent's determination that the accumulated earnings or profits of the Murphey Co. includes the profit from the redemption of the preferred stock is sustained. For the purpose of section 115 (g), as applied here, the accumulated earnings or profits of the Murphey Co. amounted to $108,509.80.

*Decision will be entered for the respondent.*

