OPINION. Rice, Judge: The sole question is whether partial redemptions of petitioners’ stock by the Corporation in 1945 and 1947 were made at such time and in such manner as to be essentially equivalent to taxable dividends to this petitioner trust and, therefore, governed by section 115 (g) of the Internal Revenue Code rather than by section 115 (c) ,[1] This is a question of fact to be determined from all of the facts and circumstances making up the record. William H. Grimditch, 37 B. T. A. 402 (1938). It is difficult for us to see how money received by petitioners for the partial redemption of their preferred stock could be “essentially equivalent” to taxable dividends. In order for section 115 (g) to apply, the distribution must be made at a time and in a manner essentially the same as it would have been had the Corporation declared and paid a taxable dividend. The petitioner trust owned only preferred stock in the Corporation, and had never held any common stock. All dividends on preferred stock, at the times of redemption were paid up. If the Corporation had declared dividends in lieu of redeeming the preferred stock, such dividends could only have been distributed to the common stockholders because all preferred dividends, including arrearages, were paid up. As shown by our findings of fact, Marie contested the third redemption in the courts, and it was only after a long battle culminating in the Supreme Court of Pennsylvania that the trust received the money for the third redemption. The purpose prompting the redemptions was the desire of the Corporation’s officers and directors to reduce the liability for the 6 per cent cumulative dividends on the preferred stock. Prior to the redemptions, this amounted to over $100,000 a year; and during the 1930s, large arrearages (over $400,000) had arisen for such, dividends. Two of the Corporation’s competitors had recapitalized, one under section 77-B of the Bankruptcy Act; and the vice president of the Corporation, as soon as he became employed by it in 1934, began to discuss the possibility of in some manner reducing such an annual liability. It was impossible to decrease the rate of dividends, since the preferred stock certificates called for a 75 per cent approval of preferred stockholders before any reduction in dividends could be made. Petitioner trust held over 25 per cent of such preferred stock, and the corporate trustee, in order to protect the income beneficiaries of the trust, refused to consent to any dividend reduction. If such redemptions were held to constitute dividends as regards petitioners herein, a peculiar basis question would arise. Petitioners, prior to any redemptions, held 7,495 shares of preferred stock of the Corporation having a basis of $462,741.30. If the distributions to petitioners upon the stock redemptions were held to constitute dividends, the cost basis for such redeemed stock would be allocable to the remaining stock, thus increasing the cost basis per share; and, as the amount of stock approached zero, the basis of the stock per share would reach fantastically .high values which could never be recovered.[2] The case of William H. Grimditch, 37 B. T. A. 402 (1938), is distinguishable from the instant case. In that case, this tribunal said “* * * in all of the instances referred to, the record owners are the wives of the holders of substantially the same proportion of common stock, which had been turned over to them as gifts shortly before the stock was redeemed.” This statement was made in answer to the contention that at the time of redemption some of the preferred stockholders did not own any common stock. In the instant case, there is no such relationship between petitioners and any common stockholder which would be equivalent to one economic unit. See also Stein v. United States (Ct. Cl., 1945), 62 F. Supp. 568. What we have said above is limited to the facts of the instant case, and we have not considered the results of the redemptions here under consideration as they affect taxpayers who might have been both common and preferred stockholders. The results need not be identical in all cases. Compare the result in James F. Boyle, 14 T. C. 1382 (1950), affd. (C. A. 3, 1951) 187 F. 2d 557, certiorari denied October 8, 1951, with the result in Carter Tiffany, 16 T. C. 1443 (1954). Under such circumstances, we/ hold that respondent erred in his determination that the money received by petitioners in 1945 and 1947 in redemption of the preferred stock of the Corporation was essentially equivalent to taxable dividends. Decision will be entered under Bule SO. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. [[Image here]] (c) Distributions in Liquidation. — Amounts distributed In complete liquidation of a corporation shall be treated as In full payment In exchange for the stock, and amounts distributed In partial liquidation of a corporation shall be treated as in part or full payment In exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * *. ******* (g) Redemption op Stock. — If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28,1918, shall be treated as a taxable dividend. [[Image here]] (1) Definition op Paetial Liquidation. — As used in this section the term “amounts distributed in partial liquidation” means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. For example, if the Corporation continued calling a certain amount of preferred stock annually (petitioners’ preferred stockholdings decreasing to one share), and such redemp-tions were held to constitute taxable dividends, such share would have a cost basis of $462,741.30. Petitioners aptly call this a “disappearing cost basis.” l^his one share could be called by the Corporation at $105, and a $462,636.80 loss would result since petitioners held no common stock against which such cost basis could be applied.