Raymond F. Koepke and Helen L. Koepke v. Commissioner.
Koepke v. Commissioner
Docket No. 46582.
United States Tax Court
T.C. Memo 1954-167; 1954 Tax Ct. Memo LEXIS 77; 13 T.C.M. (CCH) 942; T.C.M. (RIA) 54273; October 11, 1954, Filed *77 Section 115(g), Internal Revenue Code of 1939. Held, purchase and cancellation of portion of preferred stock by a corporation was essentially equivalent to distribution of a taxable dividend. Meyer A. Cook, Esq., National City Bank Building, Cleveland, Ohio, for the petitioners. Theodore E. Davis, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in income tax in the amount of $1,485.44 for the year 1949. Certain adjustments made by the Commissioner in determining the deficiency are not contested. The sole question for decision is whether amounts received by petitioner in connection with the redemption of a portion of the outstanding preferred stock of a corporation were properly treated as "essentially equivalent to the distribution of a taxable dividend" under section 115(g), Internal Revenue Code of 1939. Findings of Fact The stipulated facts are so found and the stipulation is incorporated herein by reference. Raymond F. Koepke (herein called petitioner) and Helen L. Koepke are husband and wife residing in Parma, Ohio. Their income tax return for 1949 was filed with *78 the collector of internal revenue for the eighteenth district of Ohio. Prior to incorporation of Koepke Motor Sales Company in March of 1947 the business had been operated as a partnership in which petitioner and his brother Harold C. Koepke were equal partners. On incorporation the brothers turned all the partnership assets into the corporation for which each received 25 shares of common stock and 120 shares of preferred stock, all at $100 per share. The preferred stock could be redeemed by the corporation at its option on any dividend paying date. Voting rights attached only to the common stock, with the exception that on the failure of the corporation to pay the preferred stock dividend within 24 months after any dividend paid on the common, the holders of the preferred stock were entitled to exercise a 50 percent voting power with the holders of the common. The salaries of the two brothers who were the sole stockholders and were also president and vice president of the corporation were as follows, for each: Year
Salaries
1947
$ 9,000.00
1948
15,000.00
1949
12,000.00
1950
12,000.00
1951
12,000.00
1952
7,500.00
1953
6,000.00
Accumulated earnings *79 of the corporation as of December 31, 1948, amounted to $41,731.59. In that year a common stock dividend of $20,000 was declared, leaving a balance in the surplus account of $21,731.59. The corporation has never declared any cash dividends. In 1949 petitioner desired to purchase a home and on July 12, 1949, he offered to sell 60 shares of his preferred stock to the corporation. His offer was accepted by the corporation, he was paid $6,000 for his stock, and the stock was redeemed. The purpose of the offer was to provide petitioner with funds for the purchase of a home. In 1950 a revenue agent informed petitioner that the transaction in which he received $6,000 for 60 shares of preferred stock came within the purview of section 115(g), Internal Revenue Code. In March 1951 Harold Koepke withdrew $5,500 from the corporation for the purpose of making a down payment on a home. The Koepke brothers ran debit and credit balances with the corporation from its inception for their individual and private purposes. At the end of 1953 petitioner had a debit balance of $4,419.23 and Harold a debit balance of $12,587.35 with the corporation. The 60 shares of preferred *80 stock were redeemed by the corporation at such time and in such manner as to make the payment of $6,000 to petitioner in connection with the redemption essentially equivalent to the distribution of a taxable dividend. Opinion The only question for decision, i.e., whether the redemption of 60 shares of the preferred stock held by petitioner was made at such time and in such manner as to be essentially equivalent to the distribution of a taxable dividend as provided in section 115(g), Internal Revenue Code of 1939, [1] is a question of fact to be determined from all the facts and circumstances of record. Marie W. F. Nugent-Head Trust, 17 T.C. 817. *81 Accordingly, our ultimate finding is dispositive of the controversy. Some comments on the factual situation disclosed by the record, however, will not be out of order. The corporation whose stock was redeemed was wholly owned by petitioner and his brother in equal shares. Both men were officers who drew substantial corporate salaries. Despite a series of profitable years, the corporation whose affairs were apparently handled in an informal manner by its owners, never distributed cash dividends. Both petitioner and his brother used corporate funds for personal purposes over the years, using credit and debit balances on the books to evidence such transactions. The time came when petitioner needed a substantial sum to make a down payment on a home. In this instance, instead of resorting to the usual practice of withdrawing funds, he offered 60 shares of preferred stock to the corporation at $100 per share. The offer was accepted and the stock was cancelled or redeemed. Petitioner characterizes the mechanics by which this was accomplished as a sale of the stock. We think on the record that this characterization is not significant. No corporate or other business purpose of the corporation *82 was served by the transaction. The real purpose was to put petitioner in funds for a purely personal purpose and the initiative came from petitioner, a principal stockholder, rather than from the corporation. When the smoke cleared away the accumulated cash of the corporation was reduced by the amount paid petitioner just as surely as if a "true" cash dividend had been paid. Though petitioner earnestly urges that there was no prearranged plan whereby petitioner and his brother both were to be put in funds for down payments on homes through the medium of turning stock in to the corporation, we think the record would support such an inference. Petitioner's brother did use corporate funds for that purpose when the time came for him to buy a home, albeit he characterized his transaction as a loan and no stock redemption was involved. This is explained by the question raised by the revenue agent as to the tax consequences of petitioner's own transaction which at the time were unresolved. Had no question been raised we have no doubt that the brother would also have sold stock to the corporation. Petitioner makes some point of the fact that the distribution was not pro rata since no stock *83 owned by petitioner's brother Harold was cancelled. But this does not preclude redemption of petitioner's stock from being treated as a distribution "essentially equivalent" to a dividend, J. Natwick, 36 B.T.A. 866. On the whole record we conclude that the transaction between petitioner and the corporation resulted in the redemption of stock at such time and in such manner as to be essentially equivalent to the distribution of a taxable dividend. Decision will be entered for the respondent. Footnotes
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. (g) Redemption of Stock. - (1) In General. - If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.↩