OPINION. Fishee, Judge: The petitioner, a finance company, acquired controlling interests in two automobile dealer companies during World War II. After the war, in 1948, for various reasons, it desired to divest itself of these interests completely and to transfer control of the dealer companies to those persons who had been managing them. Each of the companies had been operating profitably. The earned surplus of each was substantial and the local managers were unable to raise capital sufficient to purchase petitioner’s interest at its then book value. Moreover, petitioner desired to receive its share of the earned surplus of each company as a dividend (for which it would be entitled to a credit of 85 per cent for income tax purposes pursuant to section 26(b) of the Internal Revenue Code of 1939) rather than as part of the proceeds of a sale which would be subject to tax at capital gains rates. The local groups, as minority stockholders, however, were opposed at this time to a cash dividend which would be taxed in their hands at progressive income tax rates. For the above and other reasons, it was agreed by all concerned that each dealer company would issue preferred stock and declare a preferred stock dividend in an amount approximately equal to its earned surplus, that petitioner’s share of the preferred stock would be re- • deemed by the dealer company, and that petitioner would sell its common stock to the local group, at its then reduced book value. With respect to Victory Motors, Inc., at the closing meeting the preferred stock distributed to petitioner as a dividend was redeemed by Victory at its par value and held by it as treasury stock, and petitioner’s common stock was purchased at its reduced book value by John H. Lander and others. With respect to Liberty Motors, Inc., a preferred stock dividend of 2,660 shares was issued to petitioner. Petitioner subsequently received the par value of these shares at the closing when 240 shares were retired by Liberty and the remaining 2,420 shares were transferred to Ernest H. Woods. Also at the closing, petitioner’s common stock was purchased at its reduced book value by Woods and M. B. Casler. 1,650 of the 2,420 shares of Liberty preferred stock transferred to Woods were subject to an agreement by Liberty to redeem them within 1 year. In its return for the taxable year ended August 31, 1948, petitioner reported the proceeds of its disposition of both Victory and Liberty preferred stocks as part of its dividend income for which it claimed an 85 per cent credit. It reported as sales proceeds the amounts received for its Victory and Liberty common stocks. Respondent, however, determined that the amount attributable to the disposition of the preferred stock in each company was not a dividend but was part of the sale price received by petitioner for its common stock in each company. Respondent therefore increased petitioner’s net long-term capital gain and reduced its dividend income and credit accordingly. Petitioner contends, with respect to the Victory preferred stock and the 240 shares of Liberty preferred stock which were redeemed from petitioner by the companies, that the redemptions were in effect distributions of taxable cash dividends within the meaning of section 115 (a) of the 1939 Code, or that they were in whole of part essentially equivalent to distributions of taxable dividends within the meaning of section 115 (g), notwithstanding the concurrent sale of common stock. With respect to the remaining Liberty preferred stock issued to petitioner which was transferred to Woods and not redeemed by the company, petitioner contends first that, if the redemption of 240 shares constituted a taxable cash dividend as contended above, the distribution of tfie other shares constituted a disproportionate stock dividend which is taxable as dividend income to petitioner. See sec. 115 (f). Alternatively, petitioner contends that the immediate sale of the Liberty preferred stock to Woods, much of which was to be redeemed within 1 year, conclusively establishes that the stock was issued to petitioner as the equivalent of a cash dividend. We disagree with all of petitioner’s contentions in the light of our analysis of the instant case as expressed below. The preferred stocks issued to petitioner were in part redeemed and in part transferred (to Woods) at the closing transactions pursuant to plans by which petitioner completely divested itself of its entire interests in both dealer companies. Under these circumstances, it is our view that the proceeds received by petitioner for its preferred stocks from either the companies or Woods were in exchange therefor, and are to be treated respectively as part of the total sale price received for its complete interest in each dealer company. In Carter Tiffany, 16 T. C. 1443 (1951), petitioner was one of three controlling stockholders of Air Cruisers, Inc. Pursuant to his desire to sell his interest in the company, in December 1943, he transferred 300 shares to a fourth party and shortly thereafter sold his remaining 3,202 shares to the company. At the same time and pursuant to the same resolution adopted at a special meeting of stockholders, Boyle, another of the controlling stockholders, sold all but 300 of his shares to the company. The third controlling stockholder had died and his stock was involved in litigation concerning his estate. By mid-1945, however, the estate’s stock had also been redeemed by the company and the corporation was thereafter owned equally by Boyle and two others. All of the stock redeemed by the company was held thereafter as treasury stock. In holding that the transaction between the company and petitioner was an outright purchase by the company and a sale by petitioner and that the payment made to petitioner was not a dividend or essentially equivalent to a taxable dividend, we stated in part as follows (p. 1450): Thus, after the sale of December 13, 1943, petitioner no longer retained any beneficial stock interest whatever. His situation was wholly different from Boyle’s. He sold all of his stock. The transaction was not the equivalent of the distribution of a taxable dividend as to him. We conclude that, on the facts of this case, section 115 (g) has no application to petitioner. The application of the Tiffany case, supra, to the case at hand is illustrated by comparing it with a prior decision distinguished therein, James F. Boyle, 14 T. C. 1382 (1950), affd. (C. A. 3, 1950) 187 F. 2d 557, which involved the transaction, mentioned above, between another stockholder, Boyle, and the company. There we held that, since the upshot of the entire series of events was to distribute earnings to its principal stockholders and to leave Boyle with his identical equity interest in the corporation, the proceeds of the redemption to him was “not merely ‘essentially equivalent,’ it [was] identical with the distribution of an ordinary dividend.” The major distinction between the Boyle and Tiffany cases is that in the latter the stockholder divested himself completely of his interest in the company. The presence of this factor alone was sufficient to warrant treating the distributions in those cases for tax purposes as sales proceeds to one stockholder (Tiffany) but as a taxable' dividend to the other (Boyle) -[1] The importance of this factor is also emphasized in the recent case of Zenz v. Quinlivan, (C. A. 6, 1954) 213 F. 2d 914. Announcement that the Internal Revenue Service will follow this decision was made in Revenue Ruling 458,1954-2 C. B. 167. In the Z&nz case, the taxpayer was the sole stockholder of a corporation which had accumulated earnings and profits. The prospective purchaser of her stock, a competitor, did not want to assume tax liabilities which it was believed were inherent in the accumulation. To avoid this source of future taxable dividends, the purchaser bought part of the taxpayer’s stock for cash and 3 weeks later, after corporate reorganization, the company redeemed the balance of her stock which it thereafter held in its treasury. The redemption absorbed substantially all of the accumulated earnings. In holding that the redemption transaction was a sale of the taxpayer’s interest in the company and not the distribution of a taxable dividend, the court stated (p. 917): The use of corporate earnings or profits to purchase and make payment for all the shares of a taxpayer’s holdings in a corporation is not controlling, and the question as to whether the distribution in connection with the cancellation or the redemption of said stock is essentially equivalent to the distribution of a taxable dividend under the Internal Revenue Code and Treasury Regulation must depend upon the circumstances of each case. Since the intent of the taxpayer was to bring about complete liquidation of her holdings and to become separated from all interest in the corporation, the conclusion is inevitable that the distribution of the earnings and profits by the corporation in payment for said stock was not made at such time and in such manner as to make the distribution and cancellation or redemption thereof essentially equivalent to the distribution of a taxable dividend. In view of the fact that the application of Section 115 (g) of the Internal Revenue Code contemplates that the shareholder receiving the distribution will remain in the corporation, the circumstances of this proceeding militate against treating taxpayer’s sale as a distribution of a taxable dividend. In the instant case, petitioner concedes that the intentions of its officers were to bring about a complete disposition and liquidation of its interest in each of the dealer companies. In carrying out this intention, part of its equity interest in each dealer company (the common stock and the unredeemed portion of the Liberty preferred stock) was transferred to minority stockholders and others, and part (the redeemed preferred stock) was surrendered to the dealer companies. We see no material distinction between the method of disposition adopted in the instant case and those involved in the Z&nz and Tiffany case, supra. In each of the three cases, the taxpayer transferred a portion of an equity interest in a corporation by sale to others and the balance thereof was redeemed by the company out of its earnings and profits, both transactions being part and parcel of a plan to dispose of the stockholders’ entire equity interest. The fact that petitioner herein, as part of the over-all disposal plan, had previously caused a portion of its equity interest in each company to be represented by preferred stock, we deem to be immaterial under the circumstances here present. Accordingly, we hold that the amount received by petitioner attributable to the disposition of its preferred stock of each dealer company was a part of the proceeds of the sale of its entire interest in that company, as determined by respondent. Our holding herein with respect to the Liberty preferred stock transferred to Woods (as distinguished from the other preferred stock which was redeemed) is not inconsistent Avith our decision in C. P. Chamberlin, 18 T. C. 164 (1952), revd. (C. A. 6, 1953) 207 F. 2d 462. That case involved a so-called preferred stock bail-out plan pursuant to which (a) a corporation declared a preferred stock dividend, and (b) the stockholders (including petitioner), with the exception of one minor stockholder, thereafter sold their dividend stock to insurance companies for cash in accordance with an agreement among the corporation, the stockholders, and the insurance firms. We held there that the dividend was not a true stock dividend, but the equivalent of a cash dividend distribution constituting ordinary taxable income in the amount of the value of the preferred shares received. The Court of Appeals, in reversing, held that the transaction was a nontaxable stock dividend followed by a sale which resulted in the taxpayer realizing long-term capital gain, as distinguished from a taxable dividend. It is obvious that the stockholders involved in the Chamberlin case transactions did not divest themselves of their entire interest in the corporation therein concerned, nor did they intend to do so. After the stock dividend had been distributed to the common stockholders and sold by them, they still retained, through their common stock-holdings, an equity interest in the company and voting control thereof, although subject, of course, to the rights of the preferred stockholders. In this respect, the case at hand differs materially, and it is unnecessary for us to decide here whether or not Ave Avill hereafter follow the views expressed by the Court of Appeals for the Sixth Circuit in the Chamberlin case. We have given careful consideration to the cases of T. J. Coffey, Jr., 14 T. C. 1410 (1950); United National Corporation,2 T. C. 111 (1943), reversed on another issue (C. A. 9, 1944) 143 F. 2d 580; and Rosenbloom Finance Corporation, 24 B. T. A. 763 (1931), reversed on another issue (C. A. 3, 1933) 66 F. 2d 556. It is our vieAv that the facts therein considered differ in material respects from those before us and we hold that the cases are not here controlling. Other adjustments determined by respondent were not assigned as error by petitioner. Reviewed by the Court. Decision will be entered under Rule 60. It Is noted that there are three groups of stockholders Involved In the transactions herein under consideration : The petitioner which was completely divested of Its Interests in both companies. Lander whose Liberty preferred stock was redeemed at the closing but who retained his Liberty common stock and his Victory stocks, and the other minority stockholders of both dealer companies who retained the preferred stock distributed to them. Only petitioner is before the Court in the instant case, however, and we therefore express no views as to distributions to Lander and the other stockholders. Cf. Marie W. S. Nugent-Head Trust, 17 T. C. 817, 823, 824 (1951).