Estate of Abraham Frisch, Deceased, Robert Garlock, Executor v. Commissioner.
Estate of Frisch v. Commissioner
Docket No. 59410.
United States Tax Court
T.C. Memo 1959-74; 1959 Tax Ct. Memo LEXIS 173; 18 T.C.M. (CCH) 358; T.C.M. (RIA) 59074; April 20, 1959
George B. Lourie, Esq., 161 Devonshire Street, Boston, Mass., and Arnold R. Cutler, Esq., for the petitioner. Manning K. Leiter, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion In this case the respondent determined a deficiency in the income tax of decedent's estate for the period March 24 to December 31, 1946, in the sum of $19,077.41, with the following explanation: "Your taxable income for the year 1946 has been increased by $40,944.90 which amount was received by you in the redemption of preferred stock of A. Frisch and Company, Inc., which has been determined to be a corporate distribution taxable as an ordinary dividend under the provisions of Section 115(g) of the Internal Revenue Code of 1939." By his *174 answer filed herein on October 25, 1955, respondent claims that there should be an addition to the tax under section 291(a) of the Internal Revenue Code of 1939 in the amount of $4,769.35 because no fiduciary income tax return was filed on behalf of decedent's estate for the period here involved. Findings of Fact A stipulation of facts was filed by the parties hereto. We find the facts to be as stipulated and incorporate herein by this reference the stipulation and the exhibits attached thereto. Abraham Frisch, sometimes hereinafter referred to as the decedent, died on March 24, 1946. Robert Garlock, a member of the bar of New York, was executor of his estate during the period of time pertinent to this case. The executor filed a Federal income tax return (Form 1040) on behalf of the decedent, in which was reported the income of decedent for that part of 1946 prior to the date of his death. No Federal income tax return prepared on Form 1041 was filed by the executor which reported any income of the estate for that part of 1946 subsequent to decedent's death. From 1922 to 1931 the decedent and Ralph Cohen engaged in the jewelry business as a partnership. In the latter year the *175 partnership was terminated and a corporation, A. Frisch & Company, Inc., was formed with an authorized capital of 1,000 shares of common stock with a par value of $100 per share. Of this stock 883 shares were issued to decedent and 117 shares were issued to Cohen. The amount of stock issued to each represented "the extent of the capital [of each] shown on the books * * *." During the existence of the partnership decedent was entitled to 80 per cent of the profits and Cohen to 20 per cent. In 1942 it was agreed between decedent and Cohen that the profits of the corporation would be divided on the basis of two-thirds to decedent and one-third to Cohen, but at that time no change was made with regard to the corporation's stock. In 1945 Cohen became alarmed about decedent's health and insisted that the capitalization of the corporation should be changed to reflect the previous informal agreement with regard to distribution of the corporation's profits. Accordingly, on October 3, 1945, a recapitalization of the corporation was effected by the issuance of a new issue of 300 shares of common stock (with an allocation of $300 from the surplus to the capital account), which was to be *176 distributed on a basis of 200 shares to decedent and 100 shares to Cohen, and by retiring the prior 1,000 shares of common stock and issuing in lieu thereof 5 per cent preferred stock in the amount of $100,000 at $100 par on a share-for-share basis, with decedent receiving 883 shares of the preferred stock and Cohen receiving 117 shares. On January 16, 1946, a dividend of $20 per share was declared and paid on the common stock, the decedent receiving $4,000 and Cohen receiving $2,000. This was the only dividend declared on the corporation's common stock between 1931 and 1946. For many years prior to the second World War the corporation and its predecessor partnership had sold watches manufactured by the Waltham Watch Company and Elgin National Watch Company which followed the merchandising policy of selling their products to wholesalers throughout the United States with the wholesalers selling directly to the retail jewelers. The corporation was one of five wholesale distributors of these watch companies for the New England area. Approximately 80 per cent of its business consisted of the sale of watches manufactured by these companies. On occasions throughout these years the corporation *177 had inventories of these watches amounting to approximately $60,000. In 1942 the watch manufacturing companies, because of their participation in the war effort, ceased the production of watches for normal civilian use and thereafter the corporation "[except] for a small trickle of watches, * * * did not distribute Elgin and Waltham watches in substantial quantities * * *." However, during the war years, the corporation anticipated that when the war was over it would resume the business of acting as wholesale distributor of Elgin and Waltham watches and with this in mind it purchased United States Treasury Bonds amounting, as of January 31, 1945, to $50,000 which it intended to use in financing the purchase of such watches when and if they were again available for the wholesale trade. In January 1946 the two watch manufacturing companies, in the course of converting to peacetime production, decided to change their merchandising and distribution policy and to sell directly to retail jewelers and not through wholesale distributors. Accordingly, in the early part of 1946 the corporation was informed by the two watch companies that it would be impossible for it to resume its business *178 of acting as wholesale distributor of the watches manufactured by these companies. After decedent's death in March of 1946, his executor discussed the affairs of the corporation with Cohen and with a certified public accountant who had done the accounting work for the corporation and its predecessor partnership since 1922. The executor, who held the controlling stock in the corporation, was informed that the amounts represented by the United States Treasury Bonds had been accumulated for the purpose of going back into the wholesale watch business. Believing that they would not be needed for that purpose or for any other purpose, he instructed the accountant to take whatever steps were necessary to effect a reduction of the capital of the corporation to the extent of $50,000. The corporate minutes book shows that on October 24, 1946, it was voted: "To call for redemption and retirement, 50% of the outstanding preferred capital stock; namely, 500 shares with a par value of fifty thousand ($50,000) dollars. The retirement of the preferred stock shall be on a proportionate basis, i.e. 50% of each preferred stockholder's holdings, and shall be consummated within 30 days of the date *179 of this vote. The redemption price shall be $100.00 per share, payable by U.S. Treasury Bonds now owned by the corporation, said bonds to be valued at face value for the purposes of stock redemption. $50,000.00 of preferred stock to be retired at $100.00 per share by the payment to preferred stockholders of $50,000.00 in U.S. Treasury Bonds now owned by the corporation. "The treasurer is hereby authorized and empowered to receive and cancel the preferred stock and issue the U.S. Bonds in accordance with the vote as set forth above." On November 4, 1946, a certificate of reduction of capital was filed with the Department of Corporations and Taxation of the Commonwealth of Massachusetts reciting the reduction of the corporation's capital stock to the extent of "$50,000.00 of preferred stock to be retired at $100 per share by the payment to preferred stockholders of $50,000.00 in U.S. Treasury bonds now owned by the corporation." Before authorizing the actions above related, the executor obtained the advice of the certified public accountant, already referred to, and of a reputable attorney proficient in Federal tax law, concerning the taxable consequences of the retirement of the *180 preferred stock. He was advised by them that no taxable income would be realized thereby. Relying on this advice he filed no return reporting the receipt of income by the estate as a result of this transaction. The Federal estate tax return filed for decedent included the following: "Schedule B Stocks and Bonds "Item 5. Two hundred shares A. Frisch & Co., Inc., common, no par value, at $101.77 * * * $20,354.00 [as of date of death, March 24, 1946]. "Item 6. Eight hundred eighty-three shares, A. Frisch & Co., Inc., preferred, par $100, 5% non-cumulative. $88,300.00 "Schedule P. Net Estate for the Basic Tax 1. Total gross estate
$210,908.38
2. Total allowable deductions, except
specific exemption and property previ-
ously taxed
$11,379.09
9. Net estate
$99,529.29
"Schedule Q. Net Estate for the Additional Tax 1. Total gross estate
$210,908.38
2. Total allowable deductions, except
specific exemption and property previ-
ously taxed
$11,379.09
9. Net estate
$139,529.29
"Computation of Tax
11. Total estate tax payable
$31,366.32"
An agreement dated February 1, 1947, between the corporation and Ralph Cohen provided that Ralph *181 Cohen was to be employed as general manager of the corporation for a term of 5 years at an increase in salary to $12,000 annually. Also by agreement dated February 1, 1947, Lena B. Frisch sold and delivered to Ralph Cohen 50 shares of the common stock of the corporation at an agreed price of $5,088.78. The corporate minutes book of February 1, 1947, makes reference to both of the above agreements and further provides "[That] the corporation pay to Ralph Cohen as additional salary and bonus for his services as president, director and general manager for the fiscal year ending January 31, 1947, the sum of $6,000." The bonuses and salaries paid to Abraham Frisch and Ralph Cohen, sales, and net profit before taxes for the fiscal years ended January 31, 1944, to January 31, 1951, inclusive, were as follows: Fiscal Year
Bonus and
Bonus and
Ended
Salaries
Salaries
Net Profit
January 31
A. Frisch
R. Cohen
Sales
Before Taxes
1944
$15,250
$ 8,640
$387,531
$ 12,802
1945
15,250
8,640
290,712
14,668
1946
$15,050
$ 8,520
$342,639
$ 17,610
1947
1,800
18,000
353,094
15,633
1948
12,000
209,477
2,785
1949
7,800
199,793
4,602
1950
7,800
161,240
(17,320)
1951
7,800
206,744
(1,772)
*182 A $12,000 pension was paid to decedent's widow during the fiscal years ended January 31, 1947, and January 31, 1948. She received $1,350 in the fiscal year ended January 31, 1949. On October 3, 1951, Ralph Cohen resigned as president, director, and clerk of the corporation and all his preferred and common stock in the corporation was liquidated either by sale to the corporation or to the Estate of Abraham Frisch. The pertinent balance sheets of the corporation are as follows: A. FRISCH & COMPANY, INC.
1-31-42
1-31-43
1-31-44
1-31-45
1-31-46
Cash
$ 3,242.00
$ 30,071.00
$ 47,888.00
$ 37,032.00
$ 37,456.00
Treasury Bonds
20,000.00
50,000.00
50,006.00
Accounts
91,085.00
39,833.00
39,710.00
36,119.00
42,581.00
Receivable
Merchandise
51,179.00
52,564.00
23,174.00
23,101.00
44,661.00
Inventory
Total Current
$145,506.00
$122,469.00
$130,772.00
$146,252.00
$174,704.00
Assets
Fixed Assets Less
5,085.00
2,573.00
2,062.00
1,550.00
1,125.00
Depreciation
Other Assets
374.00
673.00
1,705.00
557.00
Total Assets
$150,591.00
$125,417.00
$133,507.00
$149,507.00
$176,386.00
Liabilities: Accounts Pay.,
$ 38,278.00
$ 15,838.00
$ 14,414.00
$ 18,077.00
$ 36,162.00
Trade
Reserve for Taxes
4,360.00
5,997.00
6,257.00
7,946.00
8,366.00
Loans Payable
12,450.00
1,326.00
Officers
Total Liabilities
$ 55,088.00
$ 21,835.00
$ 20,671.00
$ 26,023.00
$45,854.00
Net Worth: Preferred Stock
100,000.00
Common
50,000.00
50,000.00
50,000.00
50,000.00
300.00
Surplus
45,503.00
53,582.00
62,836.00
73,484.00
30,232.00
Total Net Worth
$ 95,503.00
$103,582.00
$112,836.00
$123,484.00
$130,532.00
Total Liabilities
$150,591.00
$125,417.00
$133,507.00
$149,507.00
$176,386.00
and Net Worth
*183 A. FRISCH & COMPANY, INC.
1-31-47
1-31-48
1-31-49
1-31-50
1-31-51
Cash
$ 27,714.00
$ 23,628.00
$ 10,357.00
$ 3,817.00
$ 1,760.00
Treasury Bonds
Accounts
33,563.00
27,747.00
30,284.00
25,581.00
31,786.00
Receivable
Merchandise
46,864.00
49,270.00
61,300.00
58,490.00
53,274.00
Inventory
Total Current
$108,141.00
$100,645.00
$101,941.00
$ 87,887.00
$ 86,820.00
Assets
Fixed Assets Less
863.00
840.00
659.00
479.00
300.00
Depreciation
Other Assets
514.00
393.00
6,050.00
5,949.00
7,047.00
Total Assets
$109,518.00
$101,878.00
$108,650.00
$ 94,315.00
$ 94,167.00
Liabilities: Accounts Pay.,
$ 7,141.00
$ 1,333.00
$ 4,759.00
$ 7,358.00
$ 7,873.00
Trade
Reserve for Taxes
9,589.00
5,775.00
5,580.00
5,252.00
3,948.00
Loans Payable
Officers
Total Liabilities
$ 16,730.00
$ 7,108.00
$ 10,339.00
$ 12,610.00
$ 11,821.00
Net Worth: Preferred Stock
$ 50,000.00
$ 50,000.00
$ 50,000.00
$ 50,000.00
$ 50,000.00
Common
300.00
300.00
300.00
300.00
300.00
Surplus
42,488.00
44,470.00
48,011.00
31,405.00
32,046.00
Total Net Worth
$ 92,788.00
$ 94,770.00
$ 98,311.00
$ 81,705.00
$ 82,346.00
Total Liabilities
$109,518.00
$101,878.00
$108,650.00
$ 94,315.00
$ 94,167.00
and Net Worth
*184 The earned surpluses of the corporation according to its books for the fiscal years ended January 31, 1942, 1943, 1944, and 1945 were in the respective amounts of ($4,497) deficit, $3,582, $12,836, and $23,484. The accumulated earnings and profits of the corporation available for distribution of dividends as of December 18, 1946, were $44,500. The following table shows the cost of goods sold by the corporation and average inventory stock turnover per year. Average inventory stock turnover is computed by dividing average inventory into the cost of goods sold. Fiscal Year
Average Inventory
Ended
Cost of
Stock Turnover
January 31
Goods Sold
Per Year
1942
$361,405
7.0
1943
364,043
7.0
1944
318.941
8.5
1945
230,288
10.1
1946
277,508
8.6
1947
273,854
6.0
1948
151,334
3.2
1949
149,211
2.7
1950
129,738
2.2
1951
158,077
2.8
The failure of the executor to file a Federal income tax return on Form 1041 for the period here involved was due to reasonable cause. Opinion KERN, Judge: For many years prior to the second World War, an important part of the jewelry business carried on by the corporation, of which decedent was one of *185 two stockholders, consisted of acting as wholesaler in the New England area for two prominent American watch manufacturers. The maximum capital needed for this phase of the corporation's business was the approximate amount of $60,000. In 1942 the two watch manufacturing companies ceased the manufacture of watches for the duration of the war. The corporation hoped to resume acting as wholesale distributor of watches for these two companies after the end of the war, and accumulated and held during several of the war years United States Treasury Bonds in the principal amount of $50,000 which it intended to use as capital when and if it resumed this activity. In the early part of 1946 the two watch companies, in reconverting their business to civilian production, decided to sell their products directly to retail jewelers rather than through wholesale distributors. The decedent died in March 1946. His executor, after a number of discussions with the other stockholder and the corporation's accountant, decided that the capital which had been accumulated and informally segregated for the purpose of resuming the business of selling the products of the two American watch companies at wholesale *186 would not be needed for that or any other purpose and that the capital of the corporation should be reduced to the extent of $50,000. Accordingly, in October 1946, $50,000 of the preferred stock of the corporation was retired at $100 per share by the payment to the preferred stockholders of $50,000 in United States Treasury Bonds then owned by the corporation, and the capital of the corporation was accordingly reduced. Decedent owned 883 of the 1,000 shares of preferred stock outstanding, and the other stockholder owned 117 shares. The preferred stock was intended to reflect the capital contributions of the two stockholders. Of the 300 shares of common stock, decedent held 200 shares and the other stockholder 100 shares. The common stock was intended to reflect the respective ownership of the profits of the business after the payment of 5 per cent dividend on the preferred stock. As a result of the redemption and retirement of the preferred stock, decedent's estate received United States Treasury Bonds in the face amount of $44,150, and the other preferred stockholder received such bonds in the face amount of $5,850. As of December 18, 1946, the corporation's earnings and profits *187 available for distribution as dividends amounted to $44,500. If this amount has been distributed as a dividend, decedent's estate as owner of two-thirds of the common stock would have received $29,667, and the other stockholder would have received $14,833. As a result of the redemption and retirement of 50 per cent of the preferred stock, the interest of the decedent's estate in the net worth of the corporation declined from approximately 83 per cent to approximately 80 per cent, and there was a corresponding increase of the interest of the other stockholder from 17 per cent to 20 per cent. In view of these circumstances, we conclude that the distribution incident to the retirement and redemption of 50 per cent of the corporation's preferred stock was not essentially equivalent to the distribution of a taxable dividend. See Marie W. F. Nugent-Head Trust, 17 T.C. 817. In any event, the failure of the executor to file a return on Form 1041 for the period here involved was due to reasonable cause. See Reliance Factoring Corporation, 15 T.C. 604. Decision will be entered for petitioner.