## KIRSCHENBAUM v. COMMISSIONER OF INTERNAL REVENUE.

## BANNER v. SAME.

### Nos. 69, 70.

Circuit Court of Appeals, Second Circuit.

April 8, 1946.

Ferdinand Tannenbaum, of New York City, for the petitioners.

Morton K. Rothschild, of Washington, D. C., for the respondent.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The petitioners appeal from orders of the Tax Court which assessed deficiencies in income tax against them for the year 1941. The question is whether shares of stock held by them, and transferred to the corporation, were thereby "cancelled or redeemed," and whether payments, made in exchange out of the corporation's accumulated earnings, were distributions "essentially equivalent to the distribution of the taxable dividends," under § 115(g) of the Internal Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 115(g). The taxpayers, together with one Berkman, were engaged in a textile business in New York, which they incorporated in 1934, each subscribing $10,000 for 100 shares of stock. From time to time thereafter additional shares were issued to them, until on May 31, 1938, each held 240 shares. Berkman died in June, 1939, and his widow wished to sell his shares; whereupon the taxpayers each bought 120; and in 1940, caused the corporation to declare a stock dividend of 280 shares, one half to each. In December, 1941, the corporation passed a resolution, buying from each taxpayer 166-2/3 of his 500 shares at $300 a share, the resolution declaring that the shares so bought should be "held by the corporation as treasury stock, subject to resale." The Tax Court held that, although there was no cancellation of the shares, they were "redeemed," and that the resulting "liquidation was essentially equivalent to a taxable distribution." This ruling, so far as it held that the transaction was a redemption of the stock, was contrary to our decision in Alpers v. Commissioner, 126 F.2d 58; and, so far as it held that the payment was "essentially equivalent to the distribution of taxable dividends," was contrary to our rulings in Commissioner v. Quackenbos, 78 F.2d 156; Kelly v. Commissioner, 97 F.2d 915; Patty v. Helvering, 98 F.2d 717; and De-Nobili Cigar Co. v. Commissioner, 143 F.2d

436; as it was to the rulings of the First Circuit in Commissioner v. Cordingley, 1 Cir., 78 F.2d 118; of the Fifth in Malone v. Commissioner, 128 F.2d 967; and of the Seventh Circuit in Commissioner v. Brown, 69 F.2d 602. Upon this appeal the Commissioner relies principally upon two propositions: (1.) that no question of law emerges from the record which permits a review by this court; (2.) that in Commissioner v. Estate of Bedford, 325 U.S. 283, 65 S.Ct. 1157, the Supreme Court in effect overruled the last decisions we have just cited. We agree on both points.

In cases where it affirmatively appears that the Tax Court has made a plainly erroneous legal proposition the basis of its decision, we will assume arguendo that a question does emerge with adequate certainty to be reviewable by us, although we are not sure, for at times it has seemed that, in addition, the erroneous legal proposition must be one of general application. Be that as it may, Commissioner v. Estate of Bedford, supra, 325 U.S. 283, 65 S.Ct. 1157, held non-justiciable a question almost the same as that before us, although it concerned a payment made upon a "reorganization" under § 112(g) (1) (D) and (E) of the Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 858, and not upon a "cancellation or redemption" under § 115(g). The shareholder had surrendered preferred shares for new preferred shares, new common shares and a cash payment, of which only the cash could be "recognized" as taxable income. The question was the same as that here: whether the payment was to be taxed as a capital gain or as a dividend, and that depended upon whether the distribution had "the effect of the distribution of a taxable dividend," in the words of § 112(c) (2). We can see no difference between that situation and the one before us, so far as concerns the finality of the Tax Court's decision. Whether the distribution of accumulated earnings "has the effect of the distribution of a taxable dividend," is surely the same question as whether such a distribution is "essentially equivalent to the distribution of a taxable dividend." When, therefore, Frankfurter, J., said on page 292 of his opinion in Commissioner v. Estate of Bedford, supra, 325 U.S. 283, 65 S.Ct. 1157, 1161, that the court's doubts "would have to be stronger than they are to displace the informed views of the Tax Court," equal doubts in the case at bar should persuade us not to do the same.

It is quite true that we did not have such doubts before the decision of the Supreme Court just mentioned; but that decision has engendered more than doubts. The case came orginally before us (Bedford's Estate v. Commissioner, 144 F.2d 272), and we held that those decisions were controlling which we have cited and which dealt with § 115(g). The Supreme Court did not suggest the contrary; for it is irrelevant that it held that subdivision (i) of § 115 should not be carried over into § 112, although § 115(i) defined § 115(a), and although it was necessary to resort to § 115(a) in applying § 112(c) (2). It so held because subdivision (i) of § 115 was expressly limited in scope to § 115, and when § 115(a) was incorporated by reference into § 112, it did not carry the definition with it. That did not imply that there was any difference between the locution employed in § 112(c) (2) and that in § 115(g). The court disposed very easily of the argument that the payment did not have "the effect of the distribution of a taxable dividend," by saying that, "although the capital of a company is reduced, the cash received is a distribution of earnings and profits and as such falls within the federal tax" 325 U.S. at page 292, 65 S.Ct. at page 1161. That language covers § 115(g) to the letter; and at least as "strong" doubts must arise about the Tax Court's interpretation of § 115(g) as arose about that of § 112(c) (2). For these reasons we think that a plainly erroneous legal proposition does not emerge from the record, and that the orders must stand.

Perhaps we should stop with that; but tax cases do not all come up through the Tax Court; taxpayers sometimes pay their assessments and sue in the District Courts. For that reason we wish to go further and say that we think that Commissioner v. Estate of Bedford, supra, 325 U.S. 283, 65 S. Ct. 1157, has authoritatively overruled the doctrine that the distribution of accumulated earnings in the cancellation or redemption of shares can never be "essentially equivalent" to the payment of a dividend, if the shares were originally issued for a bona fide corporate purpose: i. e., for a purpose other than to evade taxation. What other test will satisfy the language of § 115(g) we need not now attempt to say; perhaps the section covers all cancellations or redemptions which result in the distribution of accumulated earnings; perhaps there are some purposes for which a corpo-

ration may reduce its shares and distribute such earnings and yet the distribution will not be "essentially equivalent" to the payment of a dividend. The answers to these questions must be left to future decision.

One point remains. Section 115(g) applies only when the shares have been "cancelled or redeemed," and in Alpers v. Commissioner, supra, 126 F.2d 58, as we have already said, we held that "treasury shares" were neither. That question did not arise in Commissioner v. Estate of Bedford, supra, 325 U.S. 283, 65 S.Ct. 1157, and could not, because the old shares were concededly "cancelled" in the "reorganization" there before the court. Hence, we can see no reason why our ruling in Alpers v. Commissioner, supra, 126 F.2d 58, should not have the same authority as any other of our decisions, should the question arise in a District Court; for it has never been intimated that the decisions of the Tax Court have that finality as precedents, which they have when under review. That there should be one answer when the taxpayer pays his assessment and sues to recover it, and another when he resists collection, may appear inconsistent; but, if consistency is eventually to prevail, it has not done so yet. A different question arises, however, upon this appeal. As a preliminary to deciding whether the shares were "redeemed," we must decide, even though Alpers v. Commissioner, supra, 126 F.2d 58, be law, that the point is not too enmeshed with the facts to be considered; if it is not, that it is plainly enough wrong for us to overrule the Tax Court; and, perhaps, that it is a legal proposition of general application. We hold that the question is not plainly enough wrong to allow us to displace the decision of the Tax Court. That does not depend alone upon the fact that there was a dissent in Alpers v. Commissioner, supra, 126 F.2d 58, as there was. The status of "treasury shares" is in general not made perfectly clear in the books. Some courts treat them as though they were, so to say, in suspended animation—existing, but existing only in a kind of Limbo; other courts treat them as though they were retired. Whether they are to be treated as one or the other in the Internal Revenue Code, is not a priori wholly free from debate. Borg v. International Silver Co., 2 Cir., 11 F.2d 147, 150; Reynolds Co. v. Commissioner, 4 Cir., 97 F.2d 302, 307 (affirmed 306 U.S. 110, 59 S. Ct. 423, 83 L.Ed. 536); Squibb v. Helvering

2 Cir., 98 F.2d 69; Cohen's Trust v. Commissioner, 3 Cir., 121 F.2d 689; United States v. Bronson, 2 Cir., 145 F.2d 939, 943; Aviation Capital Inc. v. Pedrick, 2 Cir., 148 F.2d 165.

Orders affirmed