**BOYLE v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10314.

United States Court of Appeals Third Circuit.

Argued Dec. 22, 1950.

Decided Feb. 27, 1951.

Llewellyn A. Luce, Washington, D. C., for petitioner.

Irving I. Axelrad, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

558

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a petition to review a decision of the Tax Court holding that payment by a corporation to the taxpayer for a portion of his shares of stock in that concern was, under the facts of the case, essentially equivalent to the distribution of a taxable dividend in accordance with Section 115(g) of the Internal Revenue Code.[1]

Petitioner, an engineer, is the inventor of a number of inflatable rubber articles including rubber boats and life jackets. In 1929 he organized Air Cruisers, Inc., a Delaware corporation to manufacture and sell such products. That same year the company's authorized capital stock was increased from 10,000 to 15,000 shares of no par value. Of these no more than 10,705 shares were ever issued and outstanding. The stock ownership on dates here material was as follows:

| Stockholder | Prior to May 11, 1943 | May 11, 1943 to Dec. 13, 1943 | Dec. 13, 1943 to Dec. 18, 1943 | Dec. 18, 1943 to May 16, 1944 | May 16, 1944 to May 18, 1945 | May 18, 1945 to May 29, 1945 | After May 29, 1945 |
|---|---|---|---|---|---|---|---|
| Petitioner | 3,095 | 3,602 | 300 | 300 | 300 | 300 | 300 |
| Glover | 2,995 | 3,501 | 3,501 | 3,501 | 3,501 | — | — |
| Tiffany | 2,995 | 3,502 | 300 | 300 | — | — | — |
| H. P. Morris | 100 | 100 | 100 | — | — | — | — |
| Pelham Bissell | 710 | — | — | — | — | — | — |
| Adrian Van Muffling | 810 | — | — | — | — | — | — |
| Treasury Stock | — | — | 6,504 | 6,504 | 6,604 | 10,005 | 9,805 |
| Vaughan | — | — | — | 50 | 200 | 200 | 300 |
| Harry A. Gerrish | — | — | — | 50 | 200 | 200 | 300 |
| Totals | 10,705 | 10,705 | 10,705 | 10,705 | 10,705 | 10,705 | 10,705 |

Taxpayer, Glover and Tiffany as the chart shows, were the three chief stockholders. Taxpayer was the production head. Glover was the business manager and was president and treasurer. Tiffany was vice-president. He was active prin-

1. Section 115(g) 26 U.S.C.A. Int.Rev.Code, Section 115(g) reads:

"Redemption of stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the *distribution* of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

This is implemented by Treasury Regulation 111, Section 29.115–9, "Distribution in Redemption or Cancellation of Stock Taxable as a Dividend." The pertinent part of this reads:

"The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a div- idend distribution to the extent of the earnings and profits accumulated after February 28, 1913. On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a *taxable dividend*. A bona fide distribution in complete cancellation or redemption of all of the stock of a corporation, or one of a series of bona fide distributions in complete cancellation or redemption of all of the stock of a corporation, is not essentially equivalent to the distribution of a taxable dividend. If a distribution is made pursuant to a corporate resolution reciting that the distribution is made in liquidation of the corporation, and the corporation is completely liquidated and dissolved within one year after the distribution, the distribution will not be considered essentially equivalent to the distribution of a taxable dividend; in all other cases the facts and circumstances should be reported to the Commissioner for his determination whether the distribution, or any part thereof, is essentially equivalent to the distribution of a taxable dividend.

cipally in signing notes for the company. On May 11, 1943, the three acquired Bissell and Muffling's 1,520 shares. Taxpayer and Tiffany received 507 each of these and Glover 506. Glover died July, 1943, and taxpayer became president. In December, 1943, Vaughan, who had succeeded Glover as treasurer, and Gerrish, attorney for and later executor of the Glover Estate, acquired the Morris 100 shares each receiving 50 shares. As of May 16, 1944, 150 of the 300 Tiffany shares optioned by Gerrish were acquired by Vaughan.

Tiffany had early quarreled with Glover on management and had been trying to sell his stock since 1941. He had disagreed with Vaughan after the latter succeeded Glover and had continued his efforts to sell. Some purchasers were interested only in taking over the company itself so his efforts to sell included negotiations which embraced disposal of the entire outstanding stock. Failing to sell, either individually or on a company basis, Tiffany and the taxpayer proposed a transfer of some of their stock to the company. Gerrish approved this. At a special meeting of the stockholders on December 13, 1943, presided over by Tiffany and attended only by him and petitioner, it was agreed that the company purchase 6,504 shares of their stock at its book value of $62.67 a share. On that same date petitioner and Tiffany endorsed to the company 3,302 and 3,202 shares for which they received $206,936.34 and $200,-669.34 respectively. The 6,504 shares were held by the company as treasury stock until its dissolution. Taxpayer retained 300 shares and continued as president because Gerrish, who expected to function as executor of Glover's Estate, believed his technical knowledge was required for the company to complete work under its contracts. Tiffany gave Gerrish a ten year option to purchase 300 shares at ten cents each with a proxy and power of attorney to vote the stock during the option period. The option was exercised in 1944. Tiffany considered the 300 shares compensation to Gerrish for services in disposing of his stock to the company. Gerrish said he thought they were a gratuity from Tiffany.

After Gerrish was confirmed as executor on March 30, 1944, he was unsuccessful in attempting to work out a plan of distributing the Glover stock to the legatees. On May 17, 1945, the stockholders' annual meeting authorized the purchase by the company of the 3,501 Glover shares at $62.67 per share. The legatees were given an option extending to June 1, 1945 to purchase from the company any portion of the stock so acquired up to the extent of their respective legacies for the sum of $62.67 per share. The Glover shares were transferred to the company as of May 18, 1945. Vaughan and Gerrish exercised their options as legatees and as of May 29, 1945, each acquired 100 shares from the company. The remaining 3,301 Glover shares were held by the company as treasury stock until its dissolution.

The company's products were important in the war effort. It dealt almost exclusively with the United States Government. Its gross sales rose from practically nothing in 1939 to $10,000,000 in 1942. As of December 31, 1943, after the transfer of the stock of taxpayer and Tiffany, the company's cash on hand and surplus were $476,-294.05 and $222,711.56 respectively. The company never declared a cash or stock dividend. It was dissolved on November 7, 1949.

Petitioner reported the $206,936.34 received for his stock as a long term capital gain on his 1943 return which was filed in New Jersey. He used a basis of $10,140 being the amount paid for the 507 shares purchased from Bissell and Muffling, resulting in a gain of $196,796.34 and a "gain * * * to be taken into account" of $98,-398.17. The Commissioner determined that the $206,936.34 was to be taxed as a dividend i.e. as ordinary income instead of as a long term capital gain on the sale of assets. The Tax Court upheld this view. It found as a fact that the shares in question transferred by the petitioner to the company " * * * were redeemed by the company at such time and in such manner as to make the distribution of the $206,936.34 essentially equivalent to the distribution of a taxable dividend."

560

■ As Justice (now Chief Justice) Vinson said in Flanagan v. Helvering, 73 App. D.C. 46, 116 F.2d 937, 939, 940, " * * * the net effect of the distribution rather than the motives and plans of the taxpayer or his corporation, is the fundamental question in administering § 115(g)." [2] We followed that rule in Smith v. United States, 3 Cir., 121 F.2d 692, 696.

In examining the particular circumstances here involved, as suggested by the pertinent regulations above quoted, we find ample evidence to support the Tax Court's conclusion that this transaction arose from the desire " * * * on the part of the principal stockholders to get their money out of the business but that conditions prevented an outright sale to outsiders." The facts are not disputed. Tiffany had been trying to sell his stock both alone and as part of a package of the entire stock of the company. In 1943 he, with Glover and petitioner, had purchased the only other large outstanding stock interests. Later that year, after Glover's death, Tiffany, because of the unsettled Glover Estate, was unable to sell the company stock as a unit to the Pharis company. It was after that that he and petitioner, with Gerrish taking an active part in this proceeding, disposed of their shares to the company. In March of the following year, Gerrish finally was qualified as executor of the Glover Estate. All of the Glover legatees except Gerrish and Vaughan desired cash instead of stock and about a year later the Glover stock was taken in by the company at the same price as the Tiffany and Boyle shares. By that time the minority interests had been eliminated, with the result that the petitioner, Vaughan, and Gerrish each owned a third of the company's shares which remained outstanding.

Petitioner urges that there was no pro rata distribution and that its absence, coupled with the delay in paying out the Glover Estate shares, makes Section 115(g) inapplicable. If this was sound factually it might well be a cogent item, in connection with the other circumstances, in determining whether or not the statute reached the situation before us. Cf. Estate of Ira F. Searle, Estate of I. G. Chapin, Tax Court Docket Nos. 24804, 24805. Decided Oct. 31, 1950. —— T.C. ——. Petitioner contends that by disposal of the Tiffany shares and his own, his interest was reduced to 300 shares and Tiffany was out of the corporation. But respondent points out that the Glover Estate at the time was in litigation, and that, as Gerrish testified, petitioner and Tiffany were "practically the only stockholders of the corporation with power to act". Respondent argues that from a practical standpoint, after the company had taken back the Boyle and Tiffany shares, Boyle's voting interest had not been diminished. The Glover shares were tied up. Boyle had 300 shares left. Gerrish had an option on Tiffany's remaining 300 with power to vote. The only other outstanding stock was the 100 shares owned by Morris. Eventually, as already noted, petitioner actually possessed one-third of the company's outstanding stock as he had originally. Certainly there is sufficient evidence to warrant the holding of the Tax Court that the distribution to petitioner, Tiffany, and the Glover Estate was according to a prearranged plan. Commenting on that situation Judge Opper, in his excellent opinion below, said, "Although it took something over a year to accomplish, the upshot was, as our findings show, that a corporation, with three principal stockholders holding their shares in virtually equal proportions, distributed to them the bulk of its accumulated earnings and that ultimately there remained three shareholders again with identical holdings."

■ All of the other circumstances surrounding the payment by the company to petitioner strongly support the view of the matter taken by the Tax Court that the net effect of the distribution to petitioner amounted to a taxable dividend. The company had never paid any cash dividends. [3]

2. In the 1950 Revenue Act, Section 115(g) now has three paragraphs. The first of these is identical with Section 115(g) as it was during the critical dates of this appeal.

3. See Flanagan v. Helvering, supra, 116 F. 2d 939.

There was no manifestation by it of any policy of contraction or liquidation.[4] The initiative for the distribution came from the majority stockholders.[5] There was, as found by the Tax Court, "a large earned surplus and an unnecessary accumulation of cash, both of which were reduced as they would have been by the declaration of a true dividend."[6]

Petitioner also argues that his stock was not "redeemed" within the meaning of Section 115(g) and therefore that the section did not apply. It is true that the shares were not formally retired. They were held as treasury stock together with the Tiffany and Glover shares until the dissolution of the company. Legitimate inferences from the record substantiate the finding of the court below " * * * that there was evidently no intention here of reissuing the stock, and it seems to have been permanently acquired and put to rest in the treasury for all practical purposes as truly as though the number of shares had been formally reduced." We think that holding, under the instant facts, fairly satisfies the requirement of Section 115(g) with respect to the redemption of the shares. As Judge Soper said in Wall v. United States, 4 Cir., 164 F.2d 462, 465, speaking of shares which also had not been formally retired, " * * * when they were acquired by the corporation, they ceased to have any present significance or vitality. In the words of the statute the distribution and redemption were essentially equivalent to the distribution of a taxable dividend. If it should be held that taxpayers can avoid the terms of the statute by the simple device of selling their stock to the corporation and having it held as treasury stock, the purpose of the statute to prevent the evasion of taxes upon corporate dividends would be completely frustrated. See Robinson v. Commissioner of Internal Revenue, 5 Cir., 69 F.2d 972; cf. Alpers v. Commissioner of Internal Revenue, 2 Cir., 126 F.2d 58; Kirschenbaum v.

Commissioner of Internal Revenue, 2 Cir., 155 F.2d 23 [170 A.L.R. 1389]."

In his argument that what happened here was not the redemption called for by Section 115(g), petitioner relies heavily on Commissioner v. Snite, 7 Cir., 177 F.2d 819. Though there is language in that opinion helpful to petitioner's position it does seem to be obiter dictum as respondent suggests. In any event the vital fact in that litigation was that admittedly the stock had been purchased by the corporation in order that it could be later resold to employees. The case of Cohen Trust et al. v. Commissioner of Internal Revenue, 3 Cir., 121 F.2d 689, also cited by petitioner, was under Section 115(c) which calls for "complete * * * redemption" and is readily distinguishable from the problem before us.

The decision of the Tax Court will be affirmed.

4. Smith v. United States, 3 Cir., 121 F.2d 692, 695; Brown v. Commissioner of Internal Revenue, 3 Cir., 79 F.2d 73, 74.

5. Smith v. United States, supra, 121 F.2d 695; Bazley v. Commissioner of Internal Revenue, 3 Cir., 155 F.2d 237, 241, 244.

Affirmed 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782.

6. Bazley v. Commissioner of Internal Revenue, supra, 155 F.2d 239; Hirsch v. Commissioner of Internal Revenue, 9 Cir., 124 F.2d 24, 29.