240 F.2d 304
 Daniel W. NORTHUP, Appellant,
v.
UNITED STATES of America and Helen B. Graham, Administratrix of the estate of James J. Graham, District Director of Internal Revenue for the District of Connecticut, deceased, Appellees.
P. W. HINE, Appellant,
v.
UNITED STATES of America, Appellee.
Myrtis C. USHER, Appellant,
v.
Helen B. GRAHAM, Administratrix of the estate of James J. Graham, District Director of Internal Revenue for the District of Connecticut, deceased, Appellee.
 No. 64.
 No. 65.
 No. 66.
 Docket 24147.
 Docket 24148.
 Docket 24149.
 United States Court of Appeals Second Circuit.
 Argued November 9, 1956.
 Decided January 8, 1957.
 
 George E. Cleary, New York City, for appellants.
 Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Grant W. Wiprud, Attys., Dept. of Justice, Washington, D. C., Simon S. Cohen, U. S. Atty. for Dist. of Connecticut, Hartford, Conn., for appellees.
 Before HAND, MEDINA and LUMBARD, Circuit Judges.
 MEDINA, Circuit Judge.
 
 
 1
 The taxpayers Northup, Hine and Usher, former holders of preferred stock of I. Newman & Sons, Inc., appeal from judgments rejecting their claims for tax refunds in three consolidated cases. After a trial to the court without a jury, the court concluded that the retirement of the preferred stock in the taxable years in question was "essentially equivalent" to a dividend within the meaning of Internal Revenue Code of 1939, § 115 (g), 26 U.S.C.A. § 115(g).
 
 
 2
 I. Newman & Sons, Inc. was organized in 1923 to purchase a ladies' foundation garment and corset business. From that year through 1930, it prospered and then entered a period of decline during which losses were sustained. By the end of 1935, it was obvious that something had to be done or the business would fail.
 
 
 3
 Northup, president of the corporation and majority stockholder, proposed a plan for revitalizing the business, which was submitted at a stockholders' meeting also attended by Hine and Usher. The gist of the plan was that the corporation should issue a preferred stock dividend on the common stock. This dividend would substantially absorb the assets of the corporation, entitle its holders to a 6% cumulative dividend and, so long as it was outstanding, limit dividends on the common stock to 10% of the corporation's net profits. As part of this plan, Northup was to give a substantial share of his common stock to the sons of Hine and Usher, considered promising executive material, as an inducement for them to continue with the company and help put it back on its feet.
 
 
 4
 This plan was adopted, the sons remained, and though there was at first no visible change in the corporation's earning power, by 1939 prosperous times had returned. That year it paid current and back dividends on the preferred stock and a dividend on the common. It also retired some of the preferred. With the sole exception of 1942, the corporation continued to redeem its preferred stock until it had by 1947 retired the entire issue.
 
 
 5
 We are here concerned with the redemptions during the taxable years 1945, 1946 and 1947. The Commissioner held that the full amount thus received by taxpayers Northup, Hine and Usher should be treated as dividend income under Section 115(g),[1] and assessed deficiencies. The taxpayers paid what was claimed to be due and filed claims for refunds, which were denied. The court below held that the appellants were not entitled to the refunds, and this appeal followed.
 
 
 6
 The question presented is whether the redemptions of preferred stock out of profits and earnings were "essentially equivalent" to distributions of dividends within the meaning of Section 115(g). Under the statutory pattern of which this section is a part, different tax consequences are given to distributions out of profits and earnings in partial liquidation on the one hand and to dividends on the other. Distributions in partial liquidation are treated by Section 115(c) as received "in exchange for stock" and are generally taxed under Section 117 as long term capital gains rather than at the progressive rate imposed on dividends. To prevent taxpayers from avoiding the higher rate of taxation by consummating transactions that are in form partial liquidations and in actuality disguised dividends, the Congress adopted the "essentially equivalent" rule of Section 115(g).
 
 
 7
 The statute, however, does not state the considerations that are to be weighed in determining whether a partial liquidation is "equivalent" to a dividend. Nor does the relevant legislative history[2] particularize the method of admeasurement; it is content with describing a single illustrative situation in which the partial liquidation had "the same effect" as a dividend.
 
 
 8
 In the absence of any certain guide in the language or background of this statute, we have concluded that the test in this area as in others is one of appraising consequences. We must ask whether, viewing the transaction as a whole, different results were produced by what was in form a partial liquidation from the results that would have been produced, under the circumstances, by a dividend. If such a difference is found, Section 115(g) is not applicable.
 
 
 9
 This test is satisfied here. The common and preferred stocks were held in significantly different proportions and the percentage of preferred stock payments that went to persons who owned no common stock was 36% in 1945, 42.2% in 1946 and 74.7% in 1947. Had dividends on common stock been paid, these persons would have received nothing, as they owned no common stock. As matters developed, they received payments and parted with their interests in the corporation. The "same effect" would not have followed from a dividend as far as their interests were concerned.
 
 
 10
 Nor would the "same effect" have followed with respect to appellants Northup, Hine and Usher. These taxpayers owned respectively in 1945, 24.8% of the common stock and 20% of the outstanding preferred, 20.7% of the common and 8.5% preferred, and 21.1% common and 13.1% preferred. Had the funds expended to retire the preferred stock been applied instead to dividends on the common, each would have received larger payments than he did and, at the end of the period, been left with his preferred stock. For them, there were two significant consequences produced by the partial liquidation that would not have resulted from a dividend: because each appellant held a disproportionate share of common and preferred stock, each received different payments than he would have received as dividends and each appellant's continuing interest in the ownership of the corporation was substantially changed. For them, then, as for those preferred stockholders who held no common, the "same effect" would not have resulted from a dividend.
 
 
 11
 The trial judge thought these redemptions were "essentially equivalent" to dividends because he found no "compelling business reason for the retirement" and concluded that this fact, on balance, was decisive. We find nothing in the text of the statute, its legislative history, or the applicable Treasury Regulation[3] that makes this consideration relevant. It is true that this court at one time entertained the view that where a legitimate corporate purpose was demonstrated for the original issuance of the stock as a stock dividend, Section 115(g) would not apply to the redemption of that stock, Commissioner of Internal Revenue v. Quackenbos, 2 Cir., 78 F.2d 156; Kelly v. Commissioner of Internal Revenue, 2 Cir., 97 F.2d 915; Patty v. Helvering, 2 Cir., 98 F.2d 717; indeed, some courts still give weight to the presence of a legitimate corporate purpose, particularly where the redemption is contemporaneous with a contraction of corporate business. Jones v. Griffin, 10 Cir., 216 F.2d 885; Keefe v. Cote, 1 Cir., 213 F. 2d 651; Commissioner of Internal Revenue v. Sullivan, 5 Cir., 210 F.2d 607; Smith v. United States, 131 Ct.Cl. 748, 130 F.Supp. 586; Upham, 4 T.C. 1120; Imler, 11 T.C. 836; Chester E. Spangler, 18 T.C. 976. Occasionally, comments on the lack of business purpose are thrown in as a sort of make-weight, where the conclusion is otherwise inescapable that the pro rata redemption of stock has precisely the same effect as would follow the declaration of a dividend. See Commissioner of Internal Revenue v. Roberts, 4 Cir., 203 F.2d 304. In any event, in Kirschenbaum v. Commissioner of Internal Revenue, 2 Cir., 155 F.2d 23, we recognized that our earlier doctrine had been overruled. Section 115(g) requires an examination of the net effect of the transaction as a whole, not an examination of the motives or purposes that prompted it. Cf. Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937, 939-940.
 
 
 12
 The government urges that the question of dividend equivalence is one of fact, citing, inter alia, Keefe v. Cote, supra, and Commissioner of Internal Revenue v. Sullivan, supra, and that we are therefore limited on this appeal to determining if the District Court's decision was "clearly erroneous." We think the question whether a partial liquidation is "essentially equivalent" to a dividend, involving as it does the application of a statutory rule to found facts, is a question of law and that we are not so limited in our review. This is precisely the kind of question it is our function to decide.
 
 
 13
 The judgments below are reversed and the cases remanded for determination of the refunds to which the appellants are entitled.
 
 
 
 Notes:
 
 
 [1]
 "§ 115(g) Redemption of stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."
 
 
 [2]
 The purpose of this provision when enacted in 1926 was explained in the Committee Report as follows:
 "Section 201(f): It has been contended that under existing law a corporation, especially one which has only a few stockholders, might be able to make a distribution to its stockholders which would have the same effect as a taxable dividend. For example: Assume that two men hold practically all the stock in a corporation, for which each had paid $50,000 in cash, and the corporation had accumulated a surplus of $50,000 above its cash capital. It is claimed that under existing law the corporation could buy from the stockholders, for cash, one-half of the stock held by them and cancel it without making the stockholders subject to any tax. Yet this action, in all essentials, would be the equivalent of a distribution through cash dividends of the earned surplus. The amendment proposed to this subdivision is intended to make it clear that such a transaction is taxable." H.R.Rep. No. 1, 69th Cong., 1st Sess. 5 (1926).
 
 
 [3]
 The Treasury Regulation in effect in the taxable years, Section 29.115-9, Regulations 111, read in part as follows:
 "The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913. On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. A bona fide distribution in complete cancellation or redemption of all of the stock of a corporation, or one of a series of bona fide distributions in complete cancellation or redemption of all of the stock of a corporation, is not essentially equivalent to the distribution of a taxable dividend."