Rosamond Underwood Smith WILSON, Thomas W. Smith and Frank Stapleton, as Executors of the Estate of Cothran P. Smith, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 342, Docket 24958.

United States Court of Appeals Second Circuit.

Argued May 9, 1958.

Decided July 11, 1958.

Costello, Cooney & Fearon, M. H. Dwyer, Syracuse, N. Y. (James A. Martin, Syracuse, N. Y., on the brief), for plaintiffs-appellants.

Charles K. Rice, Asst. Atty. Gen., John J. Pajak, Lee A. Jackson, A. F. Prescott, George W. Beatty, Dept. of Justice, Washington, D. C., Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., for defendant-appellee.

Before WATERMAN and MOORE, Circuit Judges, and GALSTON, District Judge.

GALSTON, District Judge.

█ The taxpayers, as executors of an estate, appeal from an order of the District Court for the Northern District of New York dated September 18, 1957, dismissing their complaint in which they asked for a partial refund of the 1949 income tax paid by the estate.

Plaintiffs were duly appointed executors of the estate of Cothran P. Smith on January 12, 1949. Decedent's estate was valued at $1,027,940.53, and was made up principally of decedent's common stock holdings in the Addis Co., Inc., consisting of 2,480 shares of common stock valued at $868,000. There were 2,500 shares of said stock outstanding at the time of Smith's death. Smith's wife held 10 shares and a nephew who worked in the store held the remaining 10 shares. In 1949 the executors sold 200 shares of said stock to the Addis Co., Inc. for $57,-200. The transaction was arranged by the taxpayers who acted both as directors of the company and as executors of the estate. The corporate resolution recited that the stock acquired from the estate should be held in the corporate treasury and not be cancelled or redeemed. The said 200 shares so purchased by the company are still carried on the corporate books as treasury stock.

On its income tax return for 1949 the estate reported a capital gain of $43 as the result of the sale of said stock by the estate to the Addis Co., Inc. The Commissioner ruled that the $57,200 received by the estate was a distribution essentially equivalent to a dividend and was taxable at ordinary income rates, inasmuch as the company had earnings or profits of approximately $657,000. As a consequence, the Commissioner determined a deficiency of $40,103.82, which the estate later paid together with interest. The executors brought this suit to recover the total payment of $47,848.80.

The District Court dismissed the complaint without submitting the case to the jury, holding that the distribution of $57,200 to the majority stockholders was essentially equivalent to a dividend under Section 115(g) of the 1939 Internal Revenue Code.[1]

Appellants contend that since the stock was held as treasury stock by the corporation there was no cancellation or redemption within the meaning of Section 115(g), and cite, in support of this proposition, Alpers v. Commissioner, 2 Cir., 1942, 126 F.2d 58, and Commissioner of Internal Revenue v. Snite, 7 Cir., 1949, 177 F.2d 819.

In Alpers v. Commissioner, supra [126 F.2d 60] the majority of this court, in determining under the factual situation in that case that the stock was not acquired for "purposes of cancellation," indicated that they made the following assumption:

"In any event the respondent has made no contention that the distinction between retired stock and treasury stock is not justified by the statute, and we shall assume that it is."

Thereafter this court, in Kirschenbaum v. Commissioner, 2 Cir., 1946, 155 F.2d 23, 25, 170 A.L.R. 1389, certiorari denied 329 U.S. 726, 67 S.Ct. 75, 91 L.: 628, cast some doubt on the previous ruling, stating:

"The status of 'treasury shares' is in general not made perfectly clear in the books. Some courts treat them as though they were, so to say, in suspended animation—existing, but existing only in a kind of Limbo; other courts treat them as though they were retired. Whether

1. Internal Revenue Code of 1939:

"§ 22. Gross Income.

"(a) General definition. 'Gross income' includes gains, profits, and income derived from * * * dividends * * *" (26 U.S.C.1952 ed., § 22.)

"§ 115. Distribution by corporations.

"(a) Definition of dividend. The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

"(b) Source of distribution. For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

"(c) [as amended by Section 147, Revenue Act of 1942, c. 619, 56 Stat. 798] Distribution in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * *

"(g) Redemption of stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

* * * * *

"(i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

(26 U.S.C.1952 ed., § 115.)

they are to be treated as one or the other in the Internal Revenue Code, is not a priori wholly free from debate."

In Commissioner v. Snite, supra, stock was purchased by the corporation under a plan whereby it would be later resold to employees of the corporation. It was held that there was no cancellation or redemption.

In Wall v. United States, 4 Cir., 1947, 164 F.2d 462, 465, the court stated:

"We have no difficulty in reaching the conclusion in this case that the shares were redeemed in the statutory sense. * * * If it should be held that taxpayers can avoid the terms of the statute by the simple device of selling their stock to the corporation and having it held as treasury stock, the purpose of the statute to prevent the evasion of taxes upon corporate dividends would be completely frustrated."

Succeeding cases have reached the conclusion that there is no distinction under Section 115(g) between stock cancelled and retired and stock purchased but held by the corporation as treasury stock without any plan or intention of reissuance. Boyle v. Commissioner, 3 Cir., 1951, 187 F.2d 557, certiorari denied 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618; Keefe v. Cote, 1 Cir., 1954, 213 F.2d 651; Earle v. Woodlaw, 9 Cir., 1957, 245 F.2d 119, certiorari denied 354 U.S. 942, 77 S.Ct. 1400, 1 L.Ed.2d 1537.

In the instant case, when the corporation acquired the certificates of stock it had no definite plans for creating new stock obligations, and the said stock certificates are still in the corporate treasury. Clearly, by the simple expedient of holding the acquired stock in the corporation's treasury rather than retiring it, a taxpayer cannot obtain immunity from the operation of Section 115(g) of the Internal Revenue Code. Of course, where shares are purchased by a corporation under a plan to resell them, there is no cancellation or redemption within the meaning of Section 115(g).

But that state of facts does not exist in the case at bar.

Appellants next assert that there was a change in the proportionate ownership of the corporation by the various stockholders caused by the sale of the 200 shares of stock, and hence the distribution was not essentially equivalent to a taxable dividend. Prior to decedent's death he owned 2480 shares of common stock out of 2500 shares outstanding. His wife owned 10 shares and his nephew the remaining 10. Under the decedent's will 15% of his common stockholdings were specifically bequeathed to his wife and 15% to his nephew; the remaining 70% passing under the residuary clause of the will to a trust for the benefit of his son. Therefore, after decedent's death and before the sale to the corporation, the beneficial stockholdings were 382 shares each for the wife and nephew (15.28% each), and 1736 shares for the residuary trust for the benefit of the son (69.44%). After the sale, the beneficial interest changed in that the residuary trust held 200 less shares, so that the proportionate interests in the outstanding stock became 16.61% each for the wife and the nephew, and 66.78% for the residuary trust. Appellants claim that this change in the ratio of ownership is so great as to show that the distribution was not essentially equivalent to a taxable dividend.

However, even considering the beneficial interests of the legatees, we cannot conclude that the distribution resulted in any substantial change in ownership or control of the corporation. In addition there was no decrease, shrinkage or contraction in the business activities of the corporation. The transactions were carried out so that the executors of the estate would have the required funds to pay the estate tax. Furthermore, there is no dispute that large corporate earnings and profits were available and were in fact used for the distribution. The record shows that for at least six years before the stock purchase the corporation, in spite of large earnings, had paid no dividend on its common stock. See

**538**

Boyle v. Commissioner, supra; Ferro v. Commissioner, 3 Cir., 1957, 242. F.2d 838.

From an examination of the transaction as a whole, we reach the conclusion that no "different results were produced by what was in form a partial liquidation from the results that would have been produced, under the circumstances, by a dividend." Northup v. United States, 2 Cir., 1957, 240 F.2d 304, 306.

Finally, appellants contend that the trial court was in error in not submitting this case to the jury. It appears clearly that there was no dispute concerning the operative facts. As this court stated in Northup v. United States, supra:

> "We think the question whether a partial liquidation is 'essentially equivalent' to a dividend, involving as it does the application of a statutory rule to found facts, is a question of law.  *  *  *"

The order is affirmed.