Samuel E. **RADNITZ**, Jr. and Hattie Radnitz, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

United States District Court
S. D. New York.
Oct. 17, 1960.

Krisel, Lessall & Dowling, New York City, Jacob Krisel, New York City, of counsel, for plaintiffs.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, Gustave J. Soderberg, Jr., Asst. U. S. Atty., Cambridge, Mass., of counsel, for defendant.

LEVET, District Judge.

This is an action under Title 28 U.S. C.A. § 1346 to recover federal income taxes paid for the year 1955. Plaintiffs reported profits from the sale of corporate stock as capital gains and paid the tax on this basis. The Commissioner of Internal Revenue determined that under the circumstances the entire amount received by plaintiffs for their stock was taxable as ordinary income and thereupon issued a deficiency assessment, totaling some $12,722.76, which was paid under protest by plaintiffs. There are no material issues of fact. Both parties have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The plaintiffs, husband and wife, filed a joint return of their income for the year 1955. Together they owned 72 shares of the Turner Hall Corporation (hereinafter designated as "New York Turner Hall"), a New York corporation, which had issued and outstanding some 240 shares of stock. New York Turner Hall itself owned all of the issued and outstanding stock of Tylon Products, Inc. (hereinafter designated as "Tylon"), another New York corporation. Plaintiffs also owned 15 shares of the New Jersey Turner Hall Corporation (hereinafter designated as "New Jersey Turner Hall"), a New Jersey corporation, which had outstanding 100 shares of capital stock, 50 of which were also owned by New York Turner Hall. The individual shareholders of New Jersey Turner Hall together owned 90% of the stock of New York Turner Hall.

During the latter part of December, 1955, the plaintiffs, together with the other individual stockholders of New Jersey Turner Hall, sold all of their

shares in this corporation to Tylon. As already noted, New York Turner Hall owned all of Tylon's stock, as well as the remaining 50% of the shares in New Jersey Turner Hall not individually owned.

A total of $75,000 was paid by Tylon for all 50 shares of New Jersey Turner Hall stock so transferred. Thus, each New Jersey Turner Hall stockholder received $1,500 per share. The plaintiffs, whose 15 shares had originally cost them $7,500, received $22,500, giving them a profit of some $15,000. There is no evidence to indicate that the consideration for plaintiffs' shares was furnished by anyone other than Tylon.

The issue is whether the amount of $22,500 received by plaintiffs in 1955 was taxable as dividend income, as determined by the Commissioner. The defendant maintains that the above stock transfers constituted redemptions under Section 304 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 304, and that the entire amount received by plaintiffs was taxable as a dividend pursuant to the rules of Sections 301, 302, 304 and 316 of the Code, 26 U.S.C.A. §§ 301, 302, 304, 316. On the other hand, plaintiffs contend that since the transaction involved no distribution of Tylon's corporate assets or earnings and no reduction in its assets, the amount received by the plaintiffs could not be taxed as a dividend.

■ Section 304 of the Internal Revenue Code of 1954 provides in its relevant part as follows:

"304. Redemption through use of related corporations.

"(a) Treatment of certain stock purchases.—

"(1) Acquisition by related corporation (other than subsidiary). — For purposes of sections 302 and 303, if—

"(A) one or more persons are in control of each of two corporations, and

"(B) in return for property,[1] one of the corporations acquires stock in the other corporation from the person (or persons) so in control,

then * * * such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock."

This section purports to prevent tax avoidance in transactions where persons controlling all or substantially all of the stock in two corporations, the so-called "class B affiliation," sell some of their stock in one corporation to the other. For purposes of Section 304, "control" is defined in Section 304(c) (1)[2] as denoting ownership of at least 50% of the total stock of a corporation, and encompasses subsidiaries of such a corporation in which it has at least 50% ownership.

■ Under Section 304(c) (1), therefore, persons controlling a corporation which itself controls another corporation are deemed to control the latter corporation as well. This rule is said to extend the "class B affiliation" case to purchases by a subsidiary corporation of stock in a corporation which is a "class B affiliate" of its parent. See Mertens, Federal Income Taxation (Code Commentary), Sec. 304(c):1, at 55 (1956).

■ Plaintiffs and the other individual stockholders who sold their shares in New Jersey Turner Hall controlled this corporation in view of their aggregate

---

1. According to Section 317(a), 26 U.S.C.A. § 317(a), the term "property" comprehends money.

2. Section 304(c) (1) provides:
"(c) Control.—
"(1) In General.—For purposes of this section, control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote, or least 50 percent of the total value of shares of all classes of stock. If a person (or persons) is in control (within the meaning of the preceding sentence) of a corporation which in turn owns at least 50 percent of the total combined voting power of all stock entitled to vote of another corporation or owns at least 50 percent of the total value of the shares of all classes of stock of another corporation, then such person (or persons) shall be treated as in control of such other corporation."

50% stock ownership thereof. Due to their collective 90% ownership of New York Turner Hall stock, they also controlled that corporation and thus controlled its wholly-owned subsidiary, Tylon, as well. Since plaintiffs' transfer of their stock holdings was admittedly part of "substantially one transaction," whereby all individually-held shares in New Jersey Turner Hall were to be sold to Tylon, see deposition of Samuel E. Radnitz, Jr., pp. 7, 23, the entire stock transfer scheme should be treated as one for the purposes of Section 304. See Treas. Reg. § 1.304–2(b).

Section 304(c) (2) provides that the constructive ownership rules of Section 318(a) (2) (C), 26 U.S.C.A. § 318(a) (2) (C), are applicable to determine control under Section 304(c) (1), disregarding the 50% limitation contained therein.[3] Consequently, persons owning any stock in a corporation are treated as owning stock owned directly or indirectly by or for that corporation, in the same proportion which the value of the stock such persons own bears to the value of all the stock in the corporation. See also Mertens, Federal Income Taxation (Code Commentary), Sec. 304(a) (1):1, at 52 (1956).

Applying the statutory directions of Section 304, quoted above, it is evident that the plaintiffs, with others, controlled two corporations. In return for cash payments, one of the corporations, Tylon (or, indirectly, New York Turner Hall), acquired stock in the other corporation, New Jersey Turner Hall, from these controlling persons. Section 304 provides that under these circumstances, the payment received for such stock shall be treated as a "distribution in redemption" of the stock of the acquiring corporation. Redemption, therefore, is here a condition precedent for ascertaining whether a distribution is essentially equivalent to a dividend.

The defendant argues that since the requisites of Section 304(a) (1) were satisfied in the instant case, the amount paid by Tylon for plaintiffs' shares was accordingly treated as a "distribution in redemption," which, if essentially equivalent to a dividend, became taxable under the redemption rules of Section 302. In other words, once the test of Section 304 is met, Section 302 and its related sections must be examined to determine whether the distribution in redemption is taxable as a dividend.

Plaintiffs contend, on the other hand, that no distribution in fact existed since the acquiring corporation, Tylon (or New York Turner Hall, which controls Tylon), did not acquire its own stock from its own stockholders in their capacities as such. Section 317(b) of the 1954 Code does provide, it is true, that "stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property * * *." Yet, Section 304 expressly states that "for purposes of sections 302," amounts received for corporate acquisition of stock in another corporation shall, under certain circumstances, be regarded as a "distribution in redemption" of the stock of the acquiring corporation. For purposes of Section 302, therefore, this statute-imposed redemption is to be treated as if the corporation, Tylon, were in fact acquiring its own stock. In brief, a stock transaction between related companies, within the purview of Section 304, is termed a "distribution in redemption," subject to subsequent scrutiny under Section 302 to determine whether such distribution is a taxable dividend.

Plaintiffs would here reverse the pattern and hold that Section 304 comes into

---

3. Section 318(a) (2) (C) provides:

"(C) Corporations.—If 50 percent or more in value of the stock in a corporation is owned, directly or indirectly, by or for any person, then—

"(i) such person shall be considered as owning the stock owned, directly or indirectly, by or for that corporation, in that proportion which the value of the stock which such person so owns bears to the value of all the stock in such corporation; and

"(ii) such corporation shall be considered as owning the stock owned, directly or indirectly, by or for that person."

play only after a Section 302 situation exists. That is, once there has been a distribution essentially equivalent to a dividend under the rules of Sections 301 and 302, then, under Section 304, the use of related corporations to effectuate this distribution will not prevent application of dividend equivalency. If there is initially no distribution under Section 302, it is argued, then Section 304 is inapplicable.

Plaintiffs further aver that the payments received for their New Jersey Turner Hall stock cannot be treated as "distributions" under Sections 301 and 302 of the Code since the acquiring corporation, Tylon, in fact received valuable assets, viz., shares of stock, in exchange for the money expended, and its total assets were not thereby diminished. Consequently, they conclude, there could be no "distribution" under Section 304.

These arguments, however persuasive at first blush, would appear to run counter to the congressional purpose evinced by the statutory provisions and to the import of the Code.

Section 304 represented a further effort in the 1954 Code to seal possible breaches in the corporate tax structure regarding sales of stock among groups of controlled and related corporations.[4] As the Senate Finance Committee Report stated:

"The effect of the operation of section 304 is to characterize as redemptions distributions which are cast in the form of sales. The distributions in redemption shall be examined for taxability subject to the rules of section 302 (relating to distributions in redemption of stock) and 303 (relating to distributions in redemption of stock to pay death taxes).

"Subsection (a) sets forth the new general rule added by this section by providing in paragraph (1) that in any case in which 1 or more persons who are in control of each of 2 corporations (brother-sister corporations) sell the stock of one of the corporations to another of such corporations the proceeds of such sale shall be considered to be an amount distributed in redemption of the stock of the corporation which purchased the stock * * * ." 3 U.S.Code Cong. & Ad. News, 83d Cong., 2d Sess. 4876 (1954).

Section 302(a) provides that a redemption shall be treated as a distribution in part or full payment in exchange for the stock redeemed if the transaction comes within the purview of Sections 302(b) (1), (2), (3) or (4). Thus, if the redemption satisfies the factual dividend equivalency test of Section 302 (b) (1), or the specific situations of Section 302(b) (2), (3) or (4), then the amount realized on the stock redemption receives capital gains treatment. Under Section 302(d), failure to so qualify renders the redemption a distribution to which Section 301[5] applies. See also Treas.Reg. § 1304–2(a).

---

4. Sections 302 and 304 of the 1954 Code are enlarged modifications of Section 115 (g) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 115(g). See 1 Mertens, Federal Income Taxation §§ 9.98, 9.99, 9.106 (1956). Under Section 115(g), a redemption by a corporation of its own stock which was essentially equivalent to a dividend was so taxed. See, e. g., Boyle v. Commissioner, 3 Cir., 1951, 187 F.2d 557. Section 115(g) was amended in 1950 to counteract the decision in Commissioner of Internal Revenue v. Trustees Common Stock of John Wanamaker, 3 Cir., 1949, 178 F.2d 10, where the sale of stock in a corporation to its wholly-owned subsidiary was held to be outside the limited scope of Section 115(g). See

2 U.S.Code Cong.News, 81st Cong., 2d Sess. 3096 (1950). The 1950 amendment included such acquisitions.

5. The relevant portions of Section 301 provide:
"(a) In general.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).
* * * * *
"(c) Amount taxable.—In the case of a distribution to which subsection (a) applies—
"(1) Amount constituting dividend.— That portion of the distribution which is

Congress intended that the test for determining whether a redemption was "essentially equivalent to a dividend" under Section 302(b) (1) should be that generally utilized under Section 115(g) (1) of the 1939 Code. See Senate Finance Committee Report, 3 U.S.Code & Ad.News, 83d Cong., 2d Sess. 4870 (1954). In administering former Section 115(g) and its dividend equivalency test, this circuit and other courts regarded the "net effect" of the distribution as decisive, rather than the ulterior motives and plans of the stockholder and his corporation. See Northup v. United States, 2 Cir., 1957, 240 F.2d 304; Flanagan v. Helvering, 1940, 73 App.D.C. 46, 116 F.2d 937; Boyle v. Commissioner, 3 Cir., 1951, 187 F.2d 557; Smith v. United States, 3 Cir., 1941, 121 F.2d 692. The Supreme Court's explicit adoption of the "net effect" standard in Commissioner of Internal Revenue v. Estate of Bedford, 1945, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611, was acknowledged and followed by this circuit in Kirschenbaum v. Commissioner, 2 Cir., 1946, 155 F.2d 23, 170 A.L.R. 1389, certiorari denied, 1946, 329 U.S. 726, 67 S.Ct. 75, 91 L.Ed. 628. As Judge Medina noted in Northup v. United States, supra, at page 307 of 240 F.2d:

> "The trial judge thought these redemptions were 'essentially equivalent' to dividends because he found no 'compelling business reason for the retirement' and concluded that this fact, on balance, was decisive. We find nothing in the text of the statute, its legislative history, or the applicable Treasury Regulation that makes this consideration relevant.

It is true that this court at one time entertained the view that where a legitimate corporate purpose was demonstrated for the original issuance of the stock as a stock dividend, section 115(g) would not apply to the redemption of that stock, [citing cases]; indeed, some courts still give weight to the presence of a legitimate corporate purpose, particularly where the redemption is contemporaneous with a contraction of corporate business. * * * Occasionally, comments on the lack of business purpose are thrown in as a sort of make-weight, where the conclusion is otherwise inescapable that the pro rata redemption of stock has precisely the same effect as would follow the declaration of a dividend. * * * In any event, in Kirschenbaum v. Commissioner of Internal Revenue, 2 Cir., 155 F.2d 23, we recognized that our earlier doctrine had been overruled. Section 115(g) requires an examination of the net effect of the transaction as a whole, not an examination of the motives or purposes that prompted it. Cf. Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937, 939–940."

Judicial application of the "net effect" test developed various criteria for determining dividend equivalency. See, e. g. Flanagan v. Helvering, supra; Boyle v. Commissioner, supra; Ferro v. Commissioner, 3 Cir., 1957, 242 F.2d 838; Wilson v. United States, 2 Cir., 1958, 257 F.2d 534, certiorari denied, 1958, 358 U.S. 893, 79 S.Ct. 155, 3 L.Ed.2d 121. As then Judge Vinson observed in Flanagan

---

a dividend (as defined in section 316) shall be included in gross income."

Section 316(a) states:

"(a) General rule.—For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders—

"(1) out of its earnings and profits accumulated after February 28, 1913, or

"(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the

amount of the earnings and profits at the time the distribution was made.

"Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection."

v. Helvering, supra, 116 F.2d at pages 939–940:

"Most of the judicial criteria that have been determinative in placing a transaction within § 115(g) are presented in the instant case. The major part of the capitalization represented former earnings; only two relatively small cash dividends were paid; the proportional ownership of the shareholders was not changed; the corporation did not manifest any policy of contraction; the initiative for the corporate distribution came from a stockholder who needed cash; it has continued to operate at a profit. Absent here is the maintenance of the same capital liability, and there is no finding of a scheme of tax evasion (bad faith), factors sometimes significant. But the net effect of the distribution rather than the motives and plans of the taxpayer or his corporation, is the fundamental question in administering § 115(g)."

Neither Tylon nor New Jersey Turner Hall had ever declared a dividend since their respective incorporations. Yet, the affidavit of plaintiffs' attorney clearly shows that the earned surplus and undivided profits of Tylon rose from $52,582.09 on February 28, 1955, to more than $76,000 a year later, while that of New Jersey Turner Hall ranged from $45,463 to $71,016.54 for the same period.[6] Tylon, the acquiring corporation, apparently paid the entire consideration of $75,000 for the stock transfers. None of the corporations involved manifested any policy of contraction or liquidation. On the contrary, all enjoyed increased prosperity with great future expectations. While it is not entirely clear at whose prompting the stock transfer

scheme was initiated, nonetheless, we do have a large surplus and unnecessary cash accumulations held by Tylon which were eventually distributed as they would have been if true dividends had been declared. After the dust has settled, one finds the plaintiffs and their fellow stockholders as firmly ensconced in their tri-corporate positions as was true prior to the stock transaction, with admittedly no true diminution of interest or control, despite their transfers of stock.

As Judge Staley declared in Ferro v. Commissioner, 3 Cir., 1957, 242 F.2d 838, 841:

"The declaration of a true dividend leaves the ownership and control of a corporation unaffected. Where a distribution of corporate assets likewise leaves proportionate interests unchanged, that circumstance has been termed 'the most significant factor in finding dividend equivalence.'"

See also Holsey v. Commissioner, 3 Cir., 1958, 258 F.2d 865, 868.

Prior to the stock transfers, plaintiffs had a 15% direct interest in New Jersey Turner Hall, plus a 15% constructive interest by virtue of their holdings in New York Turner Hall, which owned 50% of the stock in the New Jersey corporation, giving plaintiffs a total interest of 30%.[7] As a result of the stock transaction, plaintiffs maintained a 30% interest in New Jersey Turner Hall, albeit a wholly constructive one. This situation derived from their 30% direct interest in New York Turner Hall, which in turn completely owned Tylon, and the total ownership of all the stock in New Jersey Turner Hall by Tylon and New York Turner Hall. It would seem to be immaterial under the statutes that plain-

---

6. See Section 316(a), note 5, supra. Section 304(b) (2) (A) provides that the "determination of the amount which is a dividend shall be made solely by reference to the earnings and profits of the acquiring corporation," in this case, Tylon.

7. Applying the constructive stock ownership rules of Section 318(a) (2) (C),

minus the 50% limitation therein as directed by Section 304(b) (1), the plaintiffs' 15% constructive interest in New Jersey Turner Hall results from their 30% direct interest in New York Turner Hall times the 50% direct interest of New York Turner Hall in the New Jersey corporation. See Treas.Reg. § 1304–2(c).

tiffs were thus left with a wholly constructive interest in the New Jersey corporation.

Plaintiffs urge the court that Congress sought merely to prevent those distributions which reduced corporate assets from escaping dividend equivalence liability; that since Tylon received assets it did not previously own, viz., stock in New Jersey Turner Hall, in return for the cash payments made to plaintiffs and others, no corporate assets of Tylon were depleted. However, to subscribe to these contentions would serve to frustrate the corporate tax policy exemplified by the inclusion of Section 304 in the 1954 Internal Revenue Code and to impute to Congress a limited purpose therein unwarranted by the terms of the Code or its legislative background. An examination of the circumstances surrounding the payment to plaintiffs for their stock strongly supports the Commissioner's determination that the distribution of $22,500 to the plaintiffs amounted in effect to a dividend. Once the basic facts have been established, as here, the issue as to whether the amount realized by plaintiffs is essentially equivalent to a dividend involves the application of a statutory rule to found facts and rightly presents a question of law. Northup v. United States, 2 Cir., 1957, 240 F.2d 304, 307; Wilson v. United States, supra, at page 538 of 257 F.2d. The determination of the Commissioner that the distributions to plaintiffs are taxable as dividends must, therefore, be sustained.

For the above reasons, plaintiffs' motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.

The above constitute Findings of Fact and Conclusions of Law.

Settle order on notice.