JACKSON HOWELL AND VIRGINIA HOWELL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JAMES A. KENYON TRUST, JAMES A. KENYON, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

F. NORMAN PHELPS AND ALICE PHELPS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51216, 51265, 51282. Filed July 19, 1956.

*Cameron B. Aiken, Esq.*, for the petitioners in Docket No. 51216.
*Wellman P. Thayer, Esq.*, for the petitioners in Docket Nos. 51265 and 51282.
*Mark Townsend, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The distributions in this case resemble to a considerable extent those involved in *Carter Tiffany*, 16 T. C. 1443, and *James F. Boyle*, 14 T. C. 1382, affirmed 187 F. 2d 557 (C. A. 3), certiorari denied 342 U. S. 817.  Although the situations are not identical, they are sufficiently similar, in our judgment, to call for the same results.

We hold that the redemptions of the trust shares did not constitute dividends under section 115(g), Internal Revenue Code of 1939.  Not only did these transactions sharply reduce the fractional interest of the trust in each of the corporations, but they represented a first step

in an integrated plan to eliminate the trust completely as a stockholder. As to the trust, therefore, we think it plain that the distributions represented in substance as well as in form merely the purchase price for the shares, and not the payment of a taxable dividend. Cf. *Carter Tiffany, supra; Zenz v. Quinlivan,* 213 F. 2d 914 (C. A. 6).

However, as in the *Boyle* case, which presented other distributions by the same corporation involved in the *Carter Tiffany* case, we think that the distributions to the Howell and Phelps interests herein do fall within section 115 (g) as taxable dividends. The plan was so formulated and executed that the stockholders in question emerged with the identical fractional interests in the corporations which they had owned before; the distributions were not in partial liquidation of the corporations, and the operations of the businesses were in no way curtailed. In substance the distributions simply transferred to these stockholders accumulated earnings and profits of their corporations. It is no answer to say that these transactions had their origin in the demand of Chevrolet that the trust be eliminated as a stockholder. That objective could have been achieved, and indeed with less strain upon the corporations, merely by redeeming the shares of the trust. However, Kenyon did not wish to have his control diluted, and Connell, the regional manager for Chevrolet, had himself suggested to Phelps that it would be fair to preserve the same ratios of control. But that suggestion did not represent Chevrolet policy, and we do not believe, on the evidence, that Phelps regarded it as such.[1] It was an objective that the parties themselves would undoubtedly have desired to attain, wholly apart from any suggestion emanating from Connell. Certainly, petitioners, who have the burden of proof, have not shown otherwise. The preservation of the same ratios of control, far from being a factor inconsistent with the application of section 115 (g), is in our judgment a consideration that tends rather to fortify the applicability of those provisions. For, in substance, the aim of the parties was to pay out corporate funds to stockholders in such manner that the distributions were in proportion to control and at the same time leave the distributees with the same fractional interests in the corporations. We find and hold that the distributions to the Phelps and Howell interests were made "at such time and in such manner as to make the distribution[s] * * * essentially equivalent" to the distribution of taxable dividends. Sec. 115 (g).

> *Decision will be entered under Rule 50 in Docket No. 51216; decision for the petitioner in Docket No. 51265, and decision for the respondent in Docket No. 51282.*

---

[1] In reaching this conclusion we do not rely upon the testimony given by Connell in his deposition, objected to by petitioners, that Phelps understood the suggestion as being his (Connell's) "rather than General Motor's suggestion or policy."