116 T.C. No. 23

UNITED STATES TAX COURT

FRONTIER CHEVROLET CO., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19627-98.                    Filed May 14, 2001.


        P entered into a stock sale agreement in which P
redeemed 75 percent of its outstanding stock from C in
exchange for monetary consideration.  P also entered
into a noncompetition agreement in which P agreed to
make monthly payments to C and S for a period of 5
years so long as C and S agreed not to compete with P.
P argues that it is permitted to amortize the
noncompetition agreement payments over 60 months, the
life of the agreement.

        <u>Held</u>:  Sec. 197, I.R.C., requires that a covenant
not to compete entered into in connection with a direct
or indirect acquisition of an interest in a trade or
business be amortized over 15 years.  The
noncompetition agreement was entered into in connection
with P's redemption of its stock, which was an
acquisition of an interest in a trade or business.  P
must amortize the noncompetition agreement payments
over 15 years.

Peter T. Stanley, for petitioner.

James R. Robb and Virginia L. Hamilton, for respondent.


OPINION


RUWE, Judge:  Respondent determined deficiencies in petitioner's Federal income taxes as follows:

| Year | Amount |
|------|--------|
| 1994 | $28,996 |
| 1995 | 135,880 |
| 1996 | 110,320 |

After concessions,[1] the issue for decision is whether petitioner must amortize noncompetition agreement payments over 15 years pursuant to section 197.[2]

## Background

The parties submitted this case fully stipulated.  The stipulation of facts, stipulation of settled issues, and the attached exhibits are incorporated herein by this reference. Petitioner is a corporation that had its principal place of business in Billings, Montana, at the time it filed its petition.

---

[1]The parties filed a stipulation of settled issues in which they resolved all the issues raised in the notice of deficiency. The remaining issue related to sec. 197 was raised by petitioner in its amended petition.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner is engaged in the trade or business of selling and servicing new and used vehicles.[3]  Roundtree Automotive Group, Inc. (Roundtree), is a corporation engaged in the trade or business of purchasing and operating automobile dealerships and providing consulting services to these dealerships.[4]  Frank Stinson (Mr. Stinson) was involved in the operations of Roundtree during the years 1987 through 1994.

Roundtree originally purchased all the stock of petitioner in August of 1987.  Consistent with Mr. Stinson's and Roundtree's policy of management, petitioner filled the position of executive manager of its dealership with one of Mr. Stinson's long-term employees, Dennis Menholt (Mr. Menholt).  As part of his employment by petitioner, Mr. Menholt was allowed to purchase, from 1987 through 1994, 25 percent of the stock of petitioner.

In 1994, Mr. Menholt was the general manager of petitioner's automobile dealership located in Billings, Montana, and Mr. Stinson was the president of Roundtree.  Mr. Stinson participated in the management of petitioner's business, particularly in advertising and sales training.  Roundtree received monthly payments of $22,000 for management services it performed for

---

[3]Petitioner was formerly known as Frontier Chevrolet Company.  References to petitioner include events which occurred when it was known as Frontier Chevrolet Company.

[4]Roundtree was formerly known as FS Enterprises, Inc. References to Roundtree include events which occurred when it was known as FS Enterprises, Inc.

petitioner.  Prior to August 1, 1994, Roundtree owned 75 percent of the stock in petitioner, and Mr. Menholt owned the remaining 25 percent.

Petitioner entered into a "Stock Sale Agreement" with Roundtree.  Effective August 1, 1994, petitioner redeemed all its stock owned by Roundtree for $3.5 million.  The funds to redeem the stock were borrowed from General Motors Acceptance Corporation (GMAC), with liens placed on all tangible assets of petitioner.  After the stock sale agreement, Mr. Menholt was the sole remaining shareholder of petitioner.

Petitioner also entered into a "Non-Competition Agreement" (noncompetition agreement) with Mr. Stinson and Roundtree, effective August 1, 1994.  The noncompetition agreement stated:

> To induce * * * [petitioner] to enter into and consummate the Stock Sale Agreement and to protect the value of the shares of stock being purchased, Roundtree and [Mr.] Stinson covenant, to the extent provided in Section 1 hereof, that Roundtree and [Mr.] Stinson shall not compete with * * * [petitioner's] automobile dealership, stock of which was sold to * * * [petitioner] pursuant to the Stock Sale Agreement.

Section 1, entitled "Covenant Not to Compete", provided that Roundtree and Mr. Stinson would not compete with petitioner in the car dealership business within Yellowstone County for a period of 5 years.  The agreement stated that the competition restrictions against Mr. Stinson and Roundtree "are reasonable and necessary to protect the business and interest which * * * [petitioner] under the Stock Sale Agreement is acquiring pursuant

to the Stock Sale Agreement".  As consideration for the obligations of Roundtree and Mr. Stinson, petitioner agreed to pay Roundtree and Mr. Stinson $22,000 per month for 60 months. The consideration under the noncompetition agreement was in addition to the consideration petitioner paid to redeem its stock.  In the event petitioner defaulted on the noncompetition agreement payments, the entire amount of the remaining payments would immediately become due and collectible, and the covenant not to compete would terminate 90 days after such default.  If Roundtree and Mr. Stinson breached their obligations under the agreement, petitioner was entitled to one-half of the net profits for 5 years of any business conducted which breached the covenant not to compete.

Due to the GMAC loan, petitioner was leveraged with large interest expenses.  In the summer of 1994, petitioner was below the minimum working capital requirements of its franchisor and had to obtain a special waiver of working capital requirements in order to continue holding its franchise.  There was no known alternative to the noncompetition agreement with Roundtree and Mr. Stinson in order to protect petitioner from their competition in the Billings market.  Without the agreement, it would have been difficult for petitioner to raise capital or to pay its loan from GMAC.

On its Federal income tax returns for the years 1994 through 1996, petitioner amortized the noncompetition agreement payments over 15 years. In 1999, petitioner filed a claim for refund for the taxable years 1995 and 1996 on the basis that the noncompetition agreement payments should be amortized over 60 months, the life of the agreement. In its amended petition, petitioner claims that it is entitled to a deduction for the years 1995 and 1996 for the same reasons set forth in its claim for refund.

## Discussion

The issue for decision is whether petitioner must amortize noncompetition agreement payments to Roundtree and Mr. Stinson over 15 years pursuant to section 197.

Section 197(a) provides that "A taxpayer shall be entitled to an amortization deduction with respect to any amortizable section 197 intangible." The deduction is determined by amortizing the adjusted basis of the intangible ratably over a 15-year period beginning with the month in which such intangible was acquired. See sec. 197(a). An "amortizable section 197 intangible" is any section 197 intangible acquired by a taxpayer after August 10, 1993,[5] and held in connection with the conduct

---

[5]See Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, sec. 13261(g), 107 Stat. 540, for effective date; see also Spencer v. Commissioner, 110 T.C. 62, 87 n.30 (1998), affd. without published opinion 194 F.3d 1324 (11th Cir. 1999).

of a trade or business. Sec. 197(c)(1). A covenant not to compete entered into in connection with a direct or indirect acquisition of an interest in a trade or business is a section 197 intangible.[6] See sec. 197(d)(1)(E).[7]

Petitioner argues that it did not acquire any interest in a trade or business; therefore, the covenant not to compete is not a section 197 intangible and petitioner is permitted to amortize the payments over 60 months, the life of the covenant. This is the first instance in which we have the opportunity to consider the statutory requirements of section 197 as they relate to a

---

[6]Under prior law, amounts paid for a covenant not to compete were amortizable over the life of the covenant. See Newark Morning Ledger Co. v. United States, 507 U.S. 546 (1993); Warsaw Photographic Associates v. Commissioner, 84 T.C. 21, 48 (1985). Sec. 197(b) provides that "Except as provided in subsection (a), no depreciation or amortization deduction shall be allowable with respect to any amortizable section 197 intangible."

[7]Sec. 197(d)(1) provides, in pertinent part:

SEC. 197(d). Section 197 Intangible.--For purposes of this section--

(1) In general.--Except as otherwise provided in this section, the term "section 197 intangible" means--

* * * * * * *

(E) any covenant not to compete (or other arrangement to the extent such arrangement has substantially the same effect as a covenant not to compete) entered into in connection with an acquisition (directly or indirectly) of an interest in a trade or business or substantial portion thereof * * *

covenant not to compete.

Petitioner entered into a stock sale agreement with Roundtree. Under the terms of that agreement, petitioner redeemed 75 percent of its stock from Roundtree for $3.5 million. Petitioner also entered into a noncompetition agreement with Roundtree and Mr. Stinson. A purpose of the noncompetition agreement was:

> To induce * * * [petitioner] to enter into and consummate the Stock Sale Agreement and to protect the value of the shares of stock being purchased, Roundtree and [Mr.] Stinson covenant, to the extent provided in Section 1 hereof, that Roundtree and [Mr.] Stinson shall not compete with * * * [petitioner's] automobile dealership, stock of which was sold to * * * [petitioner] pursuant to the Stock Sale Agreement.

The noncompetition agreement prohibited Roundtree and Mr. Stinson from competing with petitioner in the car dealership business within Yellowstone County for a period of 5 years. The facts establish, and petitioner does not dispute, that the noncompetition agreement was entered into "in connection with" the stock sale agreement.

Petitioner argues that it did not acquire an interest in a trade or business pursuant to the stock transaction because, both before and after the transaction, petitioner was engaged in exactly the same trade or business and it acquired no other new assets. Respondent argues that petitioner's redemption of its stock was an "acquisition" of an interest in a trade or business within the meaning of section 197.

Normally, we look to the plain language of a statute to interpret its meaning. See Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); Union Carbide Foreign Sales Corp. v. Commissioner, 115 T.C. 423, 430 (2000). When a statute is clear on its face, we require unequivocal evidence of legislative purpose before interpreting the statute to override the plain meaning of the words used therein. See Hirasuna v. Commissioner, 89 T.C. 1216, 1224 (1987); Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984). The legislative history of section 197 contains no evidence that Congress intended a purchase of stock to be excluded from the meaning of the term "acquisition" simply because the purchase occurred in the form of a redemption.

The term "acquisition" is defined as "The gaining of possession or control over something" and "Something acquired". Black's Law Dictionary 24 (7th ed. 1999). The term "redemption" is defined as "The act or an instance of reclaiming or regaining possession by paying a specific price."[8] Id. at 1282. Redemption, in the context of securities, is defined as "The reacquisition of a security by the issuer."[9] Id. In the instant

---

[8]See Boyle v. Commissioner, 14 T.C. 1382, 1390 n.7 (1950), affd. 187 F.2d 557 (3d Cir. 1951), for a detailed discussion of the origin and meaning of the term "redemption".

[9]We note that under sec. 317(b) (relating to corporate distributions and adjustments), stock is treated as redeemed by a
(continued...)

case, petitioner entered into a stock sale agreement in which it redeemed 75 percent of its outstanding stock from Roundtree. As a result of the stock sale agreement, petitioner regained possession and control over its stock. On the basis of the plain meaning of the statute, we conclude that the redemption was an "acquisition" within the meaning of section 197 because petitioner received 75 percent of its stock as a result of the transaction with Roundtree.[10]

In order for section 197 to apply, petitioner must have directly or indirectly acquired an "interest in a trade or business". The relevant legislative history of section 197 provides:

---

[9](...continued)
corporation if it acquires its stock from a shareholder in exchange for property. See also Steffen v. Commissioner, 69 T.C. 1049, 1054 (1978) (redemption under sec. 317(b) is defined as a corporation's acquisition of its stock from a shareholder in exchange for property).

[10]Although not applicable to the instant case because the noncompetition agreement was entered into before its effective date, sec. 1.197-2(b)(9), Income Tax Regs., supports respondent's argument that the term "acquisition" includes a redemption of stock. Sec. 1.197-2(b)(9), Income Tax Regs., provides, in pertinent part:

> Section 197 intangibles include any covenant not to compete, or agreement having substantially the same effect, entered into in connection with the direct or indirect acquisition of an interest in a trade or business or a substantial portion thereof. For purposes of this paragraph (b)(9), an acquisition may be made in the form of an asset acquisition * * * a stock acquisition or redemption, and the acquisition or redemption of a partnership interest. * * *

The term "section 197 intangible" also includes any covenant not to compete (or other arrangement to the extent that the arrangement has substantially the same effect as a covenant not to compete) entered into in connection with the direct or indirect acquisition of an interest in a trade or business (or a substantial portion thereof).  For this purpose, an interest in a trade or business includes not only the assets of a trade or business, but also stock in a corporation that is engaged in a trade or business or an interest in a partnership that is engaged in a trade or business.  [H. Rept. 103-111, at 764 (1993), 1993-3 C.B. 167, 340; emphasis added.]

See also H. Conf. Rept. 103-213, at 677 (1993), 1993-3 C.B. 393, 555 (using language nearly identical to that used in the House report).  The legislative history explains that an "acquisition of stock that is not treated as an asset acquisition" is treated as "an indirect acquisition of a trade or business".  Id. at 694, 1993-3 C.B. at 572.  Thus, the legislative history indicates that an interest in a trade or business includes not only the direct acquisition of the assets of the trade or business but also the acquisition of stock in a corporation that is engaged in a trade or business.

The noncompetition agreement provides that the covenant not to compete was "reasonable and necessary to protect the business and interest which * * * [petitioner] under the Stock Sale Agreement is acquiring pursuant to the Stock Sale Agreement".  Petitioner acquired 75 percent of its stock when it entered into the stock sale agreement with Roundtree.  Petitioner is a corporation engaged in the trade or business of selling and

servicing new and used vehicles.  Thus, when petitioner executed the stock sale agreement it indirectly acquired an interest, in the form of stock, in a corporation engaged in a trade or business.

Petitioner agrees that section 197 might apply if it had acquired a new trade or business, but it contends that the statute does not apply in the instant case because petitioner continued the operation of its own existing business.  Neither the statute nor the legislative history contains any indication that an interest in a new trade or business must be acquired in order for section 197 to apply.  Accordingly, we find that petitioner acquired an "interest in a trade or business" within the meaning of section 197 when it redeemed its stock from Roundtree.

Finally, petitioner appears to argue that even if there was an acquisition of an interest in a trade or business, it was by a shareholder and not petitioner.  Both the stock sale agreement and the noncompetition agreement identify petitioner, Roundtree, and Mr. Stinson, as the parties involved in the agreements.  Under the terms of the stock sale agreement, Roundtree agreed to transfer the stock directly to petitioner, not to any shareholders of petitioner.  In its brief, petitioner states that the noncompetition agreement was not entered into by any shareholders of petitioner.  Accordingly, petitioner's argument

lacks merit.

We find that the noncompetition agreement was entered into in connection with an acquisition of an interest in a trade or business. Therefore, we hold that petitioner must amortize the noncompetition agreement payments to Roundtree and Mr. Stinson over 15 years pursuant to section 197.

<u>Decision will be entered under Rule 155</u>.